## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| AGWAY FARM & HOME SUPPLY, LLC,[1] | Case No. 22-10602 (JTD) |
| Debtor. | |

## MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO PAY PREPETITION CLAIMS OF SHIPPERS AND WAREHOUSEMEN; (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS; AND (III) GRANTING RELATED RELIEF

Agway Farm & Home Supply, LLC, the debtor and debtor in possession herein ("Debtor"), hereby files this Motion ("Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing, but not directing, the Debtor to pay certain prepetition claims of shippers and warehousemen, all in the ordinary course of business, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks and electronic funds transfers related thereto, and (iii) granting related relief.

In support of the Motion, the Debtor submits the following Memorandum of Points and Authorities and the concurrently filed Declaration of Jay Quickel in Support of First-Day Motions (the "First Day Declaration").

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.   This matter  is a core proceeding  within the meaning  of 28 U.S.C. §

---

[1] The last four digits of the Debtor's federal tax identification number are 1247. The Debtor's address is 6606 W. Broad Street, Richmond, VA 23230.

157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-l(f) of the  Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District

of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with

this Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of

the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 362, 363(b),

503(b), 506(b), 546(b) and 1129(b)(2) of title 11 of the United States Code (the "Bankruptcy

Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy

Rules").

## Background

4.      The Debtor filed its voluntary petition for relief under Chapter 11 of the United

States Code Bankruptcy Code on July 5, 2022 ("Petition Date").

5.      The Debtor is continuing in possession of its property, and operating and managing

its business, as debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6.      No creditors' committee has been appointed in the Debtor's chapter 11 case.

**A.      Description of the Debtor's Businesses**

7.      The Debtor was formed as a farmer-owned cooperative in 1964 to serve the

agricultural needs of the Northeast.  The Debtor continues to nurture its deep agricultural roots as

a wholesale product distribution company providing a vast network of farm and home retailers

with their seasonal home and hardware, farm products, lawn and garden, bird food and supplies,

pet food and supplies and animal needs.

8.      A more detailed description of the Debtor's background, structure, operations and

recent financial history is detailed in the First Day Declaration.

**B.    The Shippers and Warehousemen**

9.    The Debtor is a wholesale distribution company servicing independently-owned, authorized dealer locations.

10.    Critical to the Debtor's operations are (a) reputable common carriers, movers, shippers and freight forwarders (collectively, the "Shippers"), and (b) warehousemen, storage facilities, loading and unloading services, and other providers of storage services (collectively, the "Warehousemen") that transport the products (which include lawn and garden, wild bird seed and supplies, pet products and farm supplies) (the "Goods") to the various authorized dealer locations.

11.    The Shippers include a number of common carriers, distributors and other third-party service providers, including but not limited to (a) CH Robinson, (b) Lawrence Transportation, (c) Redwood Logistics, (d) Howell Motor Freight, (e) North Atlantic Trucking, (f) Webster Express, (g) Precision Delivery Solution, (h) Pitt Ohio, (i) LAX, (j) A Duie Pyle, (k) AMA Transportation, (l) Total Quality Logistics, (m) FedEx, (n) Averitt Express Inc., and (o) Land Air Express.  The Debtor's business relies on these domestic Shippers who transport the Debtor's Goods.

12.    The Debtor's business also relies on Warehousemen at various stages of its supply and distribution chain.

13.    The Debtor and its customers depend on the timely delivery of the Goods.  Given that the Shippers and Warehousemen have physical custody over many of the Debtor's Goods, it is essential for the Debtor to incentivize its Shippers and Warehousemen to continue performing and providing the Goods to its customers in a timely manner.  If the Shippers and Warehousemen do not receive payment for their prepetition claims, they may not continue to ship the Goods on behalf of the Debtor and the Debtor in return would not be able to meet its customer commitments.

This could result in significant operational issues and increased expenses.

14.     Under certain applicable laws, a Shipper or a Warehouseman may have a possessory lien on the Goods in its possession, which secures the charges or expenses incurred in connection with the transportation or storage of the Goods.[2]  In addition, pursuant to section 363(e) of the Bankruptcy Code, the Shippers or Warehousemen, as bailees, may be entitled to adequate protection for valid possessory liens, which could hinder the Debtor's ability to sell such Goods free and clear of such asserted liens.

15.     On average, the Debtor incurs approximately $35,000 a week in charges due to its Shippers and Warehousemen.  The Debtor expects that on the Petition Date, it will have outstanding invoices for accrued, unbilled charges for Goods that were delivered prior to the Petition Date (the "Shipping and Warehousing Charges") in the amount of approximately $50,000.00.  The Debtor thus requests authority to pay up to $75,000.00 in Shipping and Warehousing Charges postpetition.  If the Debtor fails to pay any Shipping and Warehousing Charges, those Shippers and Warehousemen could argue that they are entitled to possessory liens for transportation and/or storage with respect to the Goods in their possession, and they could refuse to deliver or release such Goods before their claims have been satisfied and their liens redeemed.  Even if any Shipper and Warehousemen did not have valid liens, their possession and retention of the Goods could severely disrupt the Debtor's business operations.

13.     The value of the Goods in the possession of the Shippers and Warehousemen, coupled with the potential injury to the Debtor if the Goods are not delivered or released, exceeds

---

[2] For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." U.C.C. § 7-307(a).

the amount of the Shipping and Warehousing Charges that the Debtor seeks to pay by and through this Motion. The Debtor believes that it is necessary and essential to preserving the value of its estate for it to be permitted to make payments on account of the Shippers and Warehousing Charges.

## C.    Payments to Be Conditioned on Customary Trade Terms

14.    In order to ensure that the Debtor has continued access to goods and services provided by the Shippers and Warehousemen (collectively, the "Claimants"), the Debtor will condition payment of any prepetition amounts owed to any Claimant (the "Claims") upon verification that such Claimant will continue to abide by the parties' customary trade terms (the "Customary Trade Terms"), including that such Claimant will (i) continue to provide services to the Debtor during the pendency of this Case on the terms most favorable to the Debtor that existed in the twelve (12) months prior to the Petition Date; (ii) release any existing lien or inchoate lien rights that the Shippers and Warehousemen may currently have, and (iii) to the extent applicable, not cancel any executory contract or agreement pursuant to which such Claimant provides services to the Debtor, on less than the greater of either (a) sixty (60) days' notice; or (b) the notice period required by the respective contract or agreement. To the extent any Claimant accepts payment from the Debtor premised on their compliance with the foregoing terms, and thereafter fails to comply, the Debtor requests that any payment made to such a Claimant on account of prepetition obligations be deemed an avoidable postpetition transfer under section 549 of the Bankruptcy Code recoverable in cash by the Debtor upon written request. Upon recovery by the Debtor of any such payment, the claim for which payment was recovered would be reinstated as a prepetition claim in the amount recovered, less any costs incurred by the Debtor.

15.    The Debtor's continued access to the goods and services provided by the Claimants on the Customary Trade Terms is essential to the Debtor's continued operations. The Debtor anticipates paying the Claimant's Claims only if it reasonably believes that the benefits of making

such payment would exceed the costs, delays and disruption associated with bringing an action to compel the turnover of such Goods.

16.    The Debtor will maintain a list summarizing the name of each Claimant that received payment on their claim, the amount paid to each of the Claimants on account of their Claim, and the goods or services provided by such Claimants.

**D.    Request to Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers**

17.    In connection with the foregoing, the Debtor also requests that the Court (i) authorize all applicable banks and other financial institutions (collectively the "Banks"), when requested by the Debtor in its sole discretion, to receive, process, honor, and pay all checks and transfers issued by the Debtor in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (ii) provide that all Banks may rely on the representations of the Debtor with respect to whether any check or transfer issued or made by the Debtor before the Petition Date should be honored pursuant to this Motion (such Banks having no liability to any party for relying on such representations by the Debtor provided for herein); and (iii) authorize the Debtor to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

**RELIEF REQUESTED**

18.    By this Motion, the Debtor seeks entry of orders, pursuant to sections 105, 362, 363(b), 503(b), 506(b), 546(b), and 1129(b)(2) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, substantially in the forms attached to this Motion as **Exhibit A** and **Exhibit B**, (i) authorizing, but not directing, the Debtor to pay certain prepetition Claims of the Claimants, if any, (ii) authorizing the Banks to receive, process, honor, and pay all checks and electronic fund transfers related thereto, and (iii) granting related relief.

19.     The Debtor proposes to pay such Claims when the Debtor, in its sole discretion, determines that such creditors' exercise of its remedies would unduly disrupt the Debtor's business, or otherwise in the ordinary course of business.

**BASIS FOR RELIEF**

A.    **Section 363(b) of the Bankruptcy Code Permits the Payment of Claims Owed to Shippers and Warehousemen and Other Lien Claimants.**

20.     Courts have authorized debtors to make payments under section 363(b) of the Bankruptcy Code where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors." *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition claims where the debtors articulate "some business justification, other than the mere appeasement of major creditors").

21.     Once a debtor articulates such a valid business justification, a presumption exists in favor of the debtor's business decisions. *See In re Tower Air, Inc*., 416 F.3d 299, 238 (3d Cir. 2005) ("Overcoming the presumption of the business judgment rule on the merits is a near-Herculean task."); *see also Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) (describing the business judgment rule as "a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company").

22.     Further, sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business. 11 U.S.C. §§ 1107(a), 1108.   Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There

are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). The *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

23.     The payment to the Claimants is consistent with the sound business purpose of maximizing the value of the Debtor's estate.  The failure to satisfy the amounts due to the Claimants would have a material adverse impact on the Debtor's business.  The Debtor would risk losing revenue, customer loyalty, and goodwill that would harm its prospects for maximizing value for its estate.  Accordingly, the Debtor respectfully submits that this Court should grant the requested relief under section 363 of the Bankruptcy Code.

**B.     Payment of Obligations to the Claimants Will Allow the Debtor to Avoid the Imposition of Possessory Liens Under Section 546(b) of the Bankruptcy Code and Is Warranted Under Sections 506(b) and 1129(b)(2) of the Bankruptcy Code.**

24.     The Debtor believes that its failure to pay the amounts owed to the Claimants, if any, may result in the assertion of possessory liens by the respective Claimants under applicable state law with respect to any Goods in their possession.  Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay otherwise imposed by section 362(a) of the Bankruptcy Code. Further, pursuant to section 363(e) of the Bankruptcy Code, a carrier, as bailee, may be entitled to adequate protection on account of any valid possessory lien.

25.     To protect their asserted lien rights, the Claimants may refuse to release Goods in their possession unless and until their prepetition claims for services have been satisfied. Notwithstanding the automatic stay imposed by section 362 of the Bankruptcy Code, many of these parties (a) may be entitled to assert and perfect liens against the Debtor's property, which

would entitle them to payment ahead of other general unsecured creditors in any event, and (b) may hold the property subject to the asserted liens pending payment, to the significant detriment of the Debtor and its estate.

26.     Moreover, in cases where the amount owed to the Claimants is less than the value of any property securing those Claims, any party holding lien rights arguably is fully secured. For those Claims that are deemed secured claims, section 1129(b)(2)(A) of the Bankruptcy Code requires that they be satisfied through deferred cash payments totaling at least the allowed amount of each such claim, of a value as of the effective date of the plan equal to the value of the collateral securing the claim, with a continuation of the statutory liens against the collateral; or if the collateral is to be sold, that the statutory lien securing the claim attach to the proceeds of sale; or that the holder realize the indubitable equivalent of the claim. 11 U.S.C. § 1129(b)(2)(A). In general, under section 506(b) of the Bankruptcy Code, fully secured creditors are entitled to receive payment in full of their prepetition claims under any confirmed plan and the postpetition interest accruing on such claims to the extent that such claims are oversecured. Consequently, payment of the Claims will (a) give Claimants no more than that to which they otherwise would be entitled under the Bankruptcy Code, and (b) save the Debtor the interest costs that otherwise may accrue on the Claims or penalty costs that may be assessed during this Case.

C.    **Payment of Obligations to Claimants is Authorized by § 105(a) of the Bankruptcy Court and the Doctrine of Necessity.**

27.     Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

28.     A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a

novel concept." *In re Ionosphere* 98 B.R. at 175. "Under [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere*, 98 B.R. at 177); accord *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is 'critical to the debtor's reorganization.'") (quoting *In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)); see also *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

29.     Federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport Ry.*, 106 U.S. 286, 311–12 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945), *cert. denied*, 325 U.S. 873 (1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Michigan Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

30.     The doctrine is invoked early in a reorganization, particularly in connection with those chapter 11 transition issues that relate to the payment of prepetition claims. It is not

uncommon for courts in this District and elsewhere to authorize the payment of prepetition claims where such payment is essential to the continued operations of the debtor, and in particular claims of shippers and warehousemen. *See e.g., In re Bayou Steel BD Holdings, L.L.C.,* Case No. 19-12153 (KBO) (Bankr. D. Del. Nov. 4, 2019) (order authorizing the debtors to pay prepetition claims of certain shippers, warehousemen, and other lien claimants in the ordinary course of business), ECF No. 181; *In Furie Operating Alaska, LLC*, Case No. 19-11781 (LSS) (Bankr. D. Del. Sept. 16, 2019) (same), ECF No. 151; *In re Pancakes & Pies, LLC*, Case No. 19-11743 (KG) (Bankr. D. Del. Sept. 10, 2019) (same), ECF No. 214; *In re Emerge Energy Serv.'s LP*, Case No. 19-11563 (KBO) (Bankr. D. Del. Aug. 13, 2019 (same), ECF No. 191; *In re Lear Capital, Inc.,* Case No. 22-10165 (BLS) (Bankr. D. Del. Mar. 2, 2022 (same), ECF No. 93.

31.     If Claims do exist, paying the Claimants would benefit the Debtor's estate and its creditors by allowing the Debtor's business operations to continue without interruption.  Absent payment of the Claims, the Claimants may be unwilling to deliver Goods or release Goods in their possession, because releasing possession of the Goods could convert their claims against the Debtor from secured to unsecured.  Accordingly, it is imperative that the Court authorize the Debtor to pay the Claimants in order to avoid a serious risk that the Debtor's Goods could be delayed which could have a material adverse effect on the Debtor's business.

32.     To the extent any of the Claimants fails to comply with the Customary Trade Terms agreed to by the Debtor and the applicable party, the Debtor would be authorized to take steps to recover payment of the Claims.

33.     Accordingly, in the exercise of its sound business judgment, the Debtor submits that the proposed relief with respect to the Claimants is warranted in this case.

D.  **The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers.**

34.     In connection with the foregoing, the Debtor respectfully requests that the Court (i) authorize all applicable Banks, when requested by the Debtor in its sole discretion, to receive, process, honor, and pay all checks and transfers issued by the Debtor in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (ii) provide that all Banks may rely on the representations of the Debtor with respect to whether any check or transfer issued or made by the Debtor before the Petition Date should be honored pursuant to this Motion (such Banks having no liability to any party for relying on such representations by the Debtor provided for herein); and (iii) authorize the Debtor to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

E.  **Necessity for Immediate Relief and Effectiveness of Order.**

35.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." The Debtor is requesting the relief sought in this Motion be granted on an emergency basis because the uninterrupted Shippers and Warehousemen services are essential to the Debtor's ability to seamlessly operate under chapter 11. If the Debtor is not able to continue to ship its Goods on an uninterrupted basis, it could cause immediate and irreparable harm to the Debtor and its business operations. Accordingly, the interim relief requested herein is consistent with Bankruptcy Rule 6003.

## **RESERVATION OF RIGHTS**

36.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.   The Debtor expressly reserves its right to contest any claim related to the relief sought herein.   Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## **WAIVER OF BANKRUPTCY RULES 6003, 6004(a) AND 6004(h)**

37.     Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure,  "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm…" Fed. R. Bankr. P. 6003(b).   For the reasons described herein and as supported by the First Day Declaration, the Debtor submits that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.   To implement the foregoing successfully, the Debtor seeks a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## **NOTICE**

38.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the United States Trustee; (b) parties asserting liens against the Debtor's assets, (c) counsel to any statutory committee appointed in this case; (d) the top 20 list of

creditors in this Case; and (e) all of the Debtor's Shippers and Warehousemen.   As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-l(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court (i) enter an order, substantially in the forms attached hereto as Exhibit A and Exhibit B, granting the relief requested in this Motion, and (ii) granting such other relief as is just and proper.

[SIGNATURES ON NEXT PAGE]

Dated:  July 5, 2022
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4152)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 888-6800
Facsimile:  (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: bkeilson@morrisjames.com

and

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman (CA Bar No. 132580)
Melissa Davis Lowe (CA Bar No. 245521)
Max Casal (CA Bar No. 342716)
100 Spectrum Center Drive; Suite 600
Irvine, CA 92618
Telephone:  (949) 427-1654
Facsimile:  (949) 340-3000
E-mail: afriedman@shulmanbastian.com
E-mail: mlowe@shulmanbastian.com
E-mail: mcasal@shulmanbastian.com

*Proposed Counsel to the Debtor and Debtor in Possession*