**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AGWAY FARM & HOME SUPPLY, LLC[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10602 (JTD) |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §363 AND 105(A) AND FEDERAL RULE OF BANKRUPTCY PROCEDURES 2002 FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO ESTABLISH DE MINIMIS ASSET SALE PROCEDURES**

The above-captioned debtor and debtor-in-possession (collectively, the "Debtor"), by its undersigned counsel, hereby move (the "Motion") this Court, for entry of interim and final orders, pursuant to sections 105(a), 363, 365 and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court District of Delaware (the "Local Rules"), for entry of an order authorizing and establishing expedited procedures (the "De Minimis Asset Sale Procedures") to (a) sell or transfer in the ordinary course of the Debtor's business and without further order of the Court certain assets (mainly inventory), including any rights or interests therein (the "De Minimis Assets"; and the sales of such De Minimis Assets, the "De Minimis Asset Sales") and (b) pay any necessary expenses incurred by the Debtor in connection with the De Minimis Asset Sales. In support of the Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] The last four digits of the Debtor's federal tax identification number are 1247. The Debtor's address is 6606 W. Broad Street, Richmond, VA 23230.

1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O) and the Debtor confirms its consent pursuant to Local Rule 9013-l(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are (i) sections 105, 363, and 503, of the Bankruptcy Code, and (ii) Rules 2002(a)(2), 6003, 6004, 6006 and 9014 of the Bankruptcy Rules and Local Rules 2002-1 and 6004-1.

4. The Debtor is authorized to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

## BACKGROUND

**A.    Summary of the Debtor's Business**

5. The Debtor's headquarters is located in Richmond, Virginia and the Debtor has warehouses and distribution centers in Cloverdale, Virginia and Westfield, Massachusetts. Additionally, the Debtor maintains a satellite distribution center in West Springfield, Massachusetts.

6. The Debtor is a wholesale product distribution company that serves a broad network of independent retail stores and provides full service retail advisory support. The Debtor provides a vast network of farm and home retailers across six different major categories: (1)

2

seasonal home & hardware; (2) farm products; (3) lawn & garden; (4) bird food & supplies; (5) pet food & supplies; and (6) animal health needs (collectively, the "Product Sales").

7.    The Debtor services dealer locations along the east coast, including Maine, New Hampshire, Vermont, Massachusetts, Maryland, New York, Delaware, Rhode Island, New Jersey, Connecticut, Pennsylvania, Kentucky, West Virginia, Virginia, North Carolina, South Carolina, Georgia, and Ohio.

8.    The Debtor does not have any secured debt, other than as to two equipment leases which will not be the subject of any De Minimis Asset Sale.

9.    Within the Product Sales channel, the Debtor sells more than fifteen thousand (15,000) distinctive stock keeping units ("SKUs") with varying levels of perishability. For example, the Debtor sells pet food, bird seed and grass seed. While bird seed itself does not have an expiration date, heat and humidity invite pests and mold that spoil the product. In regard to grass seed, there is an applicable expiration date that is subject to further testing.

10.    The Debtor classifies each of its products, or SKUs, into one of: Class A, B, C, or D based upon the "liquidity" of the product or how quickly the product sells. Class A products are the most liquid while Class D products are the least liquid.

B.    **Events Leading to Bankruptcy and Wind Down**

11.    Due to various events described in more detail in the First Day Declaration, in March 2022, the Debtor initiated a wind-down plan in which the Debtor: (1) laid off about one-half of the Debtor's employees; (2) offered to let some employees stay onboard on a contract work basis; and (3) offered a retention bonus to certain critical employees to incentivize them to stay.

12.    The Debtor expects to continue laying off Employees until the end of July 2022 when the Debtor intends to conduct an auction of the Debtor's assets or an inventory or asset sale to certain businesses (individually, a "Strategic" or collectively, "Strategics").

13.    As of the Petition Date, the Debtor was in contact and had entered into negotiations with several Strategics with varying interests in various types of sale.

14. The Debtor received one letter of intent from a Strategic that offered to purchase a significant portion of the Debtor's inventory but the offer was rejected because the offered price was too low. The Debtor continues its discussion with various Strategics to hopefully come to terms on one or more agreements to sell all or a portion of its assets subject to overbid. If it cannot, it will seek to auction its remaining assets.

15. Pending the sale discussions with the Strategics, the Debtor has implemented a strategy for the sale of its inventory using discounted rates. As of the Petition Date, Class A products are being discounted 20%, Class B 35%, Class C 50% and Class D 50% (the "Sale Discount Rates").

16. The Debtor expects to continue sales of the De Minimis Assets at the Sale Discount Rates until the end of July (although it could be as late as end of August 2022) when the Debtor receives a bulk offer for the purchase of its assets and the sale of De Minimis Assets would cease, or the Debtor determines it must conduct an auction for the sale of its remaining assets.

17. The Debtor believes the sale of the De Minimis Assets at the Sale Discount Rates yield a higher rate of return than will a sale to a Strategic and certainly more than will an auction sale.

18. The Debtor expects the sales of De Minimis Assets to total, collectively, no more than $200,000 per week post-petition. The average transaction amount per customer since March 1, 2022 is $3,031. The sale of De Minimis Assets must continue without delay post-petition in order to maximize the value of the Estate's assets for creditors. Some of the De Minimis Assets are perishable and must be sold as soon as possible. More importantly, the Debtor needs to maximize the sale of the De Minimis Assets before any of its current labor force terminates his/her employment with the Debtor. If employees start leaving post-petition, the Debtor could lose its ability to sell the De Minimis Assets at the Sale Discount Rates and instead, be forced to sell the inventory at auction for a much lower price.

19. The Debtor only has 22 employees remaining, all of whom are critical to the continued sale of the De Minimis Assets. In particular, the remaining employees have a high

degree of skilled labor and knowledge with respect to the sale process of the De Minimis Assets. They know exactly where the inventory is located, are skilled forklift drivers who are familiar with the warehouse "pick and pack" trolley system and able to gather the necessary items quickly and safely, package the items correctly, and load them correctly on trucks for delivery.

20. The Debtor is concerned that one or more of its employees may terminate his/her employment at or near the bankruptcy filing. In fact, certain employees have already expressed concern over the bankruptcy process and that they need to find alternative employment that is more stable. The Debtor believes the employees may be able to find attractive alternative employment quickly due to the overall industry labor shortages for these skilled laborers and will thus leave the Debtor's employment.

21. If any one of the employees terminates their employment with the Debtor, it will adversely affect the process of the sale of De Minimis Assets, if not halt the process altogether, to the detriment of the Estate and its creditors because, as stated above, the Debtor believes the sale of De Minimis Assets will yield the highest possible return at this time.

22. As such, the Debtor believes the immediate and uninterrupted continuation of the sale of the De Minimis Assets, while the employees are still employed with the Debtor and while certain items are still viable, is absolutely imperative to maximizing value for the Estate.

### **RELIEF REQUESTED**

23. By this Motion, the Debtor seeks entry of interim and final orders, the proposed form of which are attached hereto, authorizing the Debtor to establish the De Minimis Asset Sale Procedures set forth below so that it may consummate the sale of De Minimis Assets without the time and cost associated with having to obtain Court approval for every sale.

24. The Debtor also seeks authority to use the Sale Discount Rates in negotiating and consummating the sale of any De Minimis Assets as otherwise set forth herein.

25. Subject to the terms of the De Minimis Asset Sale Procedures, the Debtor will negotiate such De Minimis Asset Sales in consultation with its counsel, financial advisors and

management, at prices that the Debtor, in an exercise of its business judgment, believes are fair and appropriate.

26. Notwithstanding, to the extent applicable, pursuant to the De Minimis Asset Sale Procedures, the Debtor would be permitted to sell De Minimis Assets that are encumbered by liens or encumbrances only if the transaction satisfies at least one of the five (5) enumerated requirements of section 363(f) of the Bankruptcy Code. Pursuant to the procedures set forth below, if the Debtor sells or transfers any De Minimis Assets that are encumbered by liens, such liens would attach only to the proceeds of the sale or transfer with the same validity, extent, and priority as immediately prior to the De Minimis Asset Sale. The Debtor does not expect to sell any De Minimis Assets that are encumbered by liens but includes this request out of an abundance of caution.

27. Accordingly, the Debtor proposes the following De Minimis Asset Sale Procedures:

**a. De Minimis Asset Sales Less than or Equal to $35,000.00:**

i. The Debtor is authorized to sell or transfer any De Minimis Asset for a total purchase price per such buyer[2] that is less than or equal to $35,000.00 (each sale, a "Non-Noticed De Minimis Asset Sale"), without further Court approval and without providing notice of the Non-Noticed De Minimis Sale to any party, whether by private sale or by auction. The Debtor is further authorized to take any actions that are reasonable and necessary to close the Non-Noticed De Minimis Sale and obtain the sale proceeds and pay any necessary expenses incurred in connection therewith;[3] and

---

[2] Any single buyer must aggregate the total of its purchases to determine whether such purchases qualify as a Non-Noticed De Minimis Asset Sale and may not make another purchase from the Debtors for a period of four (4) weeks without providing notice reflecting the aggregates all purchases by the purchaser within that 4-week period. In other words, any single buyer cannot escape the sales price limit for a Non-Noticed De Minimis Asset sale by making multiple separate purchases. Solely by way of example, if John Smith purchased $10,000 of goods from the Debtor on June 1, pursuant to the De Minimis Asset Sale Procedures, the Debtor would not need to notice the sale, however, if John Smith were to seek to purchase an additional $30,000 of goods from the Debtor on June 12, the Debtor would need to provide notice as though the second sale was for $400,000.

[3] The only expenses the Debtor expects to incur are freight charges to deliver the items.

ii. If any of the De Minimis Assets to be sold or transferred by the Debtor pursuant to a Non-Noticed De Minimis Asset Sale are encumbered by liens, the Debtor will seek to obtain the consent of the applicable lienholder(s). If the Debtor is unable to obtain the consent of the applicable lienholder(s), the Debtor may seek to sell or transfer the encumbered De Minimis Assets as a Noticed De Minimis Sale (as defined below) in accordance with the procedures below.

iii. No less than every week, the Debtor will make available to counsel to the Creditors Committee (if one is appointed) and to the U.S. Trustee a report that provides information with respect to the Non-Noticed De Minimis Asset Sales, including (i) a detailed description of the De Minimis Asset sold or transferred, (ii) the identity of the purchaser or transferee and any relationship such party has with the Debtor, (iii) the identities of any lienholder(s) known to the Debtor as holding liens on or with respect to the De Minimis Asset, (iv) the material economic terms and conditions of the Non-Noticed De Minimis Asset Sale (which may be provided by including the applicable contract or contracts to the Transaction Notice), and (v) any freight charges paid.

**b. De Minimis Asset Sales Greater than $35,000 but Less than or Equal to $70,000:**

i. For any sale or transfer of De Minimis Assets where the total aggregate purchase price by buyer[4] is greater than $35,000 but less than or equal to $70,000 (a "<u>Noticed De Minimis Asset Sale</u>"), the Debtor shall give notice of such transaction (the "<u>Transaction Notice</u>"), by electronic mail, overnight courier, or hand delivery on the Core Notice Parties (as defined below). Each Transaction Notice will include (i) a general description of the De Minimis Asset proposed to be sold or transferred, (ii) the identity of the purchaser or

---

[4] Any single buyer must aggregate the total of its purchases to determine whether such purchases qualify as a Non-Noticed De Minimis Asset Sale and may not make another purchase from the Debtors for a period of four (4) weeks without providing notice reflecting the aggregates all purchases by the purchaser within that 4-week period. In other words, any single buyer cannot escape the sales price limit for a Non-Noticed De Minimis Asset sale by making multiple separate purchases. Solely by way of example, if John Smith purchased $30,000 of goods from the Debtor on June 1, pursuant to the De Minimis Asset Sale Procedures, the Debtor would not need to notice the sale, however, if John Smith were to seek to purchase an additional $50,000 of goods from the Debtor on June 12, the Debtor would need to obtain Court approval as though the second sale was for $80,000.

13688776.v1

transferee and any relationship such party has with the Debtor, (iii) the identities of any lienholder(s) known to the Debtor as holding liens on or with respect to the De Minimis Asset, (iv) the material economic terms and conditions of the proposed De Minimis Asset Sale (which may be provided by attaching the applicable contract or contracts to the Transaction Notice), (v) any freight charges; and (vi) instructions regarding the procedures for asserting an objection to the Noticed De Minimis Asset Sale;

      ii. The Debtor shall serve any Transaction Notice on (i) counsel to the Creditors Committee (if any is appointed), (ii) the Office of the United States Trustee for the District of Delaware, and (iii) any other creditors holding liens on the De Minimis Assets subject to the proposed transaction (collectively, the "Core Notice Parties"). The Debtor shall not be required to serve any Transaction Notice on any other parties, and no further or additional notice of the proposed Noticed De Minimis Asset Sale shall be required;

      iii. The Core Notice Parties shall have five (5) business days from service of a Transaction Notice to object in writing to a Noticed De Minimis Asset Sale (the "Notice Period");

      iv. Any objection to a Noticed De Minimis Asset Sale (each, an "Objection") must: (i) be in writing; (ii) set forth the name of the objecting party; (iii) provide the basis for the Objection and the specific grounds therefor; and (iv) be served by electronic mail on the Debtor's counsel, so as to be received on or before 4:00 p.m. (Eastern Time) on the last day of the Notice Period;

      v. If an Objection is properly served: the Noticed De Minimis Asset Sale may not proceed absent (1) withdrawal of the Objection or (2) entry of an Order by the Court approving the Noticed De Minimis Asset Sale; and

      vi. If no Objection is timely served, (1) such Noticed De Minimis Asset Sale shall be deemed final and fully authorized by the Court, and no additional or further notice or Court approval to consummate the Noticed De Minimis Asset Sale shall be required, and (2) the Debtor shall be authorized to take any actions that are reasonable and necessary to

8

close the Noticed De Minimis Sale and obtain the sale proceeds and pay any necessary freight charges incurred in connection therewith.

**c. Effects of De Minimis Asset Sales:**

i. All buyers will take each De Minimis Asset sold by the Debtor pursuant to the De Minimis Asset Sale Procedures subject to the terms of the documentation executed in connection with the applicable De Minimis Asset Sale, which documentation may (but is not required to) include provisions that the buyers are taking the De Minimis Assets "as is" and "where is," without any representations or warranties from the Debtor as to the quality or fitness of such De Minimis Assets. Buyers will, however, take title to the (i) Non-Noticed De Minimis Asset Sales with the consent of any applicable lienholder and (ii) Noticed De Minimis Assets free and clear of any liens or encumbrances pursuant to section 363(f) of the Bankruptcy Code. All such liens or encumbrances shall attach to the proceeds of the applicable Noticed De Minimis Asset Sale with the same validity, extent, and priority as had attached to the Noticed De Minimis Assets immediately prior to such sale or transfer.

**d. Asset Sales Greater than $70,000:**

i. For any sale or transfer of assets where the total aggregate purchase price is greater than $70,000, the Debtor shall obtain Court approval after notice and an opportunity for hearing pursuant to the normal procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

28. The Debtor submits that entry into the De Minimis Asset Sales during the Chapter 11 Case is reasonable and necessary for the benefit of the Debtor's estate, and establishment of the De Minimis Asset Sale Procedures is, therefore, desirable and in the best interests of the estate, its creditors, and all parties in interest. The sale or transfer of the De Minimis Assets will generate additional value for the benefit of the Debtor's estate and all parties in interest. These procedures will conserve the Debtor's resources, ensure the maximum yield from the Debtor's inventory, promote the efficient administration of this Chapter 11 Case, and make the De Minimis Asset Sales cost-effective in a manner that will provide the most benefit to the Debtor's estate while still

providing appropriate notice to certain creditors and parties in interest. Accordingly, the Motion should be approved.

## BASIS FOR RELIEF REQUESTED

29. For the reasons set forth herein, this Court should grant the relief requested and approve the De Minimis Asset Sale Procedures as a sound exercise of the Debtor's business judgment and in the best interests of its estate, creditors, and all parties in interest.

**A.    The Court Should Approve the Proposed De Minimis Asset Sale Procedures Pursuant to Sections 363 and 105(a) of the Bankruptcy Code as a Sound Exercise of the Debtor's Business Judgment**

30. The Court has authority to approve such the De Minimis Asset Sales and the related procedures pursuant to section 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When determining whether to authorize the sale of property outside the ordinary course of business, courts require that a debtor "show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.),* 242 B.R. 147, 253 (D. Del. 1999); *see also In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 178 (D. Del. 1991) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale). When a sound business purpose exists, and the sale is made in good faith, a sale pursuant to section 363(b)(1) of the Bankruptcy Code should be approved. *See In re Abbotts Dairies of Pa., Inc.,* 788 F. 2d 143, 150-51 (3d Cir. 1986) (noting that when a court authorizes a sale of assets pursuant to section 363(b)(1), it is required to consider the "good faith" of the purchaser).

31. Furthermore, the Court has authority to approve the De Minimis Asset Sale Procedures pursuant to section 105 of the Bankruptcy Code, which provides, in relevant part, that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32. The Debtor submits that the De Minimis Asset Sale Procedures are both an exercise of sound business judgment and in the best interests of its estate and all parties in interest. As discussed above, the De Minimis Asset Sale Procedures provide for an efficient and cost-effective means of maximizing the value to be realized with respect to the De Minimis Assets.

33. Obtaining separate Court approval for each De Minimis Asset Sale would be administratively burdensome to the Court and costly to the Debtor's estate and could eliminate or substantially undermine the economic benefit that would be realized from such sales by the Debtor's estate. In some instances, the usual process for obtaining Court approval for such sales may hinder the Debtor's ability to take advantage of the Sale Discount Rates which will yield the highest return for the sale of the De Minimis Assets. In addition, some of the Debtor's assets to be sold are perishable and must be sold as quickly as possible. Most importantly, the De Minimis Assets must be sold as quickly as possible, while the Debtor's highly skilled labor force remains employed with the Debtor. Accordingly, to alleviate the cost and delay of filing a separate motion for each proposed De Minimis Asset Sale and to eliminate any uncertainty regarding the Debtor's authority to consummate certain sales, the Debtor seeks approval of the De Minimis Asset Sale Procedures set forth herein.

34. Moreover, the Debtor often faces stringent time constraints in meeting the closing deadlines established by interested purchasers, as well as in selling or transferring assets before they significantly decline in value or perish such that they are no longer saleable. The Debtor's current labor force is critical to being able to meet such deadlines and as such, the sale of De Minimis Assets must continue post-petition without delay.

35. The De Minimis Asset Sale Procedures will permit the Debtor to be responsive to the needs of interested purchasers (thereby minimizing the risk of lost sales due to delay), while still providing appropriate notice to review the proposed transactions.

36. The Debtor's proposed sales of De Minimis Assets are in good faith, as the Debtor represents that no insider will gain an unfair advantage from the sales proposed herein since full disclosure will be made with respect to any insider sales. *See In re Abbotts Dairies of Pa., Inc.,*

13688776.v1

788 F. 2d at 147. Moreover, as set forth above, the Debtor will provide the Core Notice Parties with the opportunity to review and object to any proposed transaction.

**B.      The De Minimis Asset Sale Procedures Satisfy the Notice and Hearing Requirements Under Section 363(b)(1)**

37.     The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for a hearing are given in light of the particular circumstances of a proposed transaction. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances"). Courts have noted that "the notice requirements of bankruptcy law are 'founded in fundamental notions of procedural due process.'" *Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.),* 467 B.R. 694, 706 (S.D.N.Y. 2012) (citations omitted). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks and citations omitted).

38.     Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of the proposed sale of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code, unless a debtor shows "cause." *See* Fed. R. Bankr. P. 2002(a)(2) and (i). Once the debtor shows "cause," however, Bankruptcy Rule 2002(a)(2) authorizes this Court to shorten the generally applicable 21-day notice period and direct a method of giving notice other than by mail. *See* Fed. R. Bankr. P. 2002(a)(2). Moreover, this Court is authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice. *See* Fed. R. Bankr. P. 2002(i).

39.     In addition, the sale or transfer of property outside the ordinary course of business may be authorized without an actual hearing, if no party in interest timely requests such a hearing.

*See* 11 U.S.C. § 102(1)(B)(i) (notwithstanding the statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest").

40. The De Minimis Asset Sale Procedures comply with the hearing requirements of the Bankruptcy Code, as well as due process, by providing the Core Notice Parties with an opportunity to present objections to Noticed De Minimis Asset Sales. Such Noticed De Minimis Asset Sales may be approved without a hearing if no objection is filed with respect thereto, but if an objection is not resolved, the Debtor will not be able to proceed with a Noticed De Minimis Asset Sale without a hearing. Furthermore, all known holders of liens will also receive adequate notice and an opportunity to object.

41. Based on the foregoing, the Debtor submits that sufficient cause exists to implement the De Minimis Asset Sale Procedures and such procedures will improve the efficiency of the sale process for De Minimis Assets and maximize the value of such assets to the Debtor's estate. In light of the demonstrable benefits of streamlined procedures to the De Minimis Assets, courts in this district have approved similar procedures to permit the sale of such de minimis assets in other chapter 11 cases. *See, e.g., In re Fred's Inc., Case No*. 19-11984 (CSS) (Bankr. D. Del. Sept. 26, 2019) [Dkt. No. 192] (authorizing de minimis asset sales up to $1.5 million); *In re Southcross Energy Partners, L.P.,* Case No. 19-10702 (MFW) (Bankr. D. Del. May 6, 2019) [Dkt. No. 190] (authorizing de minimis asset sales up to $2 million); *In re Welded Construction, L.P.,* Case No. 18-12378 (CSS) (Bankr. D. Del. Nov. 19, 2018) [Dkt. No. 245] (authorizing de minimis asset sales up to $2 million).

**C.     The Proposed De Minimis Asset Sale Procedures Satisfy the Requirements of Section 363(f) and Allow the Debtor to Sell or Transfer Property Free and Clear**

42. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (ii) such entity

13

consents; (iii) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f)(1)–(5). Section 363(f) is stated in the disjunctive; therefore, it is only necessary to meet one of the five conditions listed in that section when selling property of the estate. *See Citigroup Homeowners Servs. v. Elliott (In re Elliott),* 94 B.R. 343, 345 (E.D. Pa. 1988) (court may approve sale "free and clear" provided at least one of the subsections is met).

43.     The Debtor submits that the De Minimis Asset Sale Procedures satisfy the requirements of section 363(f) of the Bankruptcy Code. Pursuant to the De Minimis Asset Sale Procedures, to the extent there are any known holders of liens on the De Minimis Assets, the Debtor will provide such parties with a Transaction Notice prior to the disposition of the applicable De Minimis Asset. Absent any objection to a Noticed De Minimis Asset Sale, a holder of a lien or encumbrance shall be deemed to consent to the Noticed De Minimis Asset Sale and such asset may be sold free and clear of such lien. *See Esposito v. Title Ins. Co. of Pa. (In re Fernwood Market),* 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders). As noted above, the interests of a holder of a lien will attach to the proceeds of the sale or transfer, subject to any rights and defenses of the Debtor with respect thereto. To the extent consent of a lienholder is not obtained or deemed to have been obtained, the Debtor submits that with respect to any proposed transaction, the holder of any lien or other encumbrance could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

**D.     Waiver of Bankruptcy Rule 6003(b) is Appropriate**

44.     Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate" shall not be granted by the Court within twenty-one (21) days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . ." Fed. R. Bankr. P. 6003(b). For the reasons described herein and as supported by the First Day Declaration, the Debtor submits

that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

**E.    Relief from the Fourteen Day Waiting Period Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate**

45.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtor requests that the order granting this Motion be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

46.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006. Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen (14) day stay period, Collier suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." *Collier on Bankruptcy* P. 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

47.    In light of the perishability of the Debtor's assets, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

13688776.v1

**NOTICE**

48. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtor; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PRIOR REQUEST**

49. The Debtor has not previously sought the relief requested herein from this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Debtor respectfully request entry of interim and final orders granting this Motion, substantially in the forms attached hereto as Exhibit A and Exhibit B, granting the relief requested in this Motion and such other and further relief as may be appropriate and proper.

Dated: July 5, 2022
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Brya M. Keilson*
Jeffrey R. Waxman (DE Bar No. 4152)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: bkeilson@morrisjames.com

and

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman (CA Bar No. 132580)
Melissa Davis Lowe (CA Bar No. 245521)
Max Casal (CA Bar No. 342716)
100 Spectrum Center Drive; Suite 600
Irvine, CA 92618
Telephone: (949) 427-1654
Facsimile: (949) 340-3000
E-mail: afriedman@shulmanbastian.com
E-mail: mlowe@shulmanbastian.com
E-mail: mcasal@shulmanbastian.com

*Proposed Counsel to the Debtor and Debtor in Possession*