# EXHIBIT B

ABC Services Group, Inc.
13681 Newport Avenue, #8-609
Tustin, CA 92780
*Chuck@abcservices.group*
(949) 922-1211

June 29, 2022

Board of Managers (the "Board") of
Agway Farm & Home Supply, LLC
6606 W. Broad St.
Richmond, VA 23230

Attn: Jay Quickel, President & CEO

  Re: <u>ABC Services Group, Inc. — Engagement Agreement</u>

Dear Board,

We appreciate the opportunity to work with Agway Farm & Home Supply, LLC, a Delaware limited liability company ("<u>Company</u>"). This Engagement Agreement ("<u>Agreement</u>") confirms and sets forth the terms and conditions of the engagement between the Company and ABC Services Group, Inc., a Delaware corporation ("<u>ABCSG</u>") regarding the scope of the services to be performed by ABCSG and its personnel (the "<u>Engagement</u>") and the basis of compensation for those services.

1. Description of Services.

    (a) <u>Executive Services – Chief Liquidation Officer</u>. During the term of this Engagement, ABCSG shall provide Charles "Chuck" Klaus ("<u>Mr. Klaus</u>") to the Company to serve as chief liquidation officer ("<u>CLO</u>") for the Company. If Mr. Klaus is unable to serve as CLO, ABCSG and the Company will work collaboratively to select a replacement CLO. The CLO will work under the direction of, and report to, the Board of the Company to: (i) manage the Company restructuring efforts in the form of an orderly liquidation of the assets and properties of the Company, which will include a filing under Chapter 11 of the Bankruptcy Code upon the approval of the Board; (ii) manage the Company's efforts to liquidate its assets and liabilities for the benefit of its respective creditors and stakeholders, including, without limitation, authorizing the CLO to administer and carry out the Company's duties as a debtor-in-possession; (iii) manage a sale process to marshal and sell the Company's assets under Section 363 of the Bankruptcy Code, as applicable; and (iv) manage the Company's efforts to confirm a plan of liquidation pursuant to the Bankruptcy Code.

    (b) <u>Liquidation Services</u>. Mr. Klaus, as CLO, and ABCSG in aid of the CLO, will seek to utilize the expertise of ABCSG and its personnel, together with the Company's employees to efficiently provide the following services, as appropriate:

1

(i) Manage the affairs of the Company, supervise the Company's professionals and provide periodic reports to the Board;

(ii) Assist legal counsel and the Company in executing the Company's liquidation efforts in a chapter 11 case;

(iii) Supervise the engagement of the Company's financial advisor, if any, to the extent such party may be necessary to sell particular assets and properties for the highest and best price;

(iv) Seek to maximize the value of the Company's assets and operations through, one or more of the following: seeking the sale of one or both of the Company's Distribution Centers or their assets, in whole or in part, and/or continue with the orderly liquidation process with a clean-up auction sale at the end of the liquidation sale process (individually and collectively "Transaction");

(v) Assist in connection with motions, responses, or other court activity as directed by legal counsel;

(vi) Prepare periodic reporting to creditors, stakeholders, the Bankruptcy Court, and the Office of the United States Trustee;

(vii) Evaluate and develop liquidation plans and other strategic alternatives for maximizing the value of the Company's assets through the vehicles of private or public sales under the supervision of the CLO. The CLO, in coordination with the Company's other professionals, shall recommend to the Board various plans and strategic alternatives from time to time, and upon receipt of Board's approval of a proposed course or courses of action, the CLO shall use commercially reasonable efforts to implement such course(s) of action, subject, as applicable, to approval of the Bankruptcy Court if appropriate;

(viii) Assist in the formulation and preparation of the Company's disclosure statement and plan of liquidation, including working with the Company's professionals and advisors in the creation of financial projections and supporting methodology, key assumptions and rationale, appropriate financial analysis and evaluation of the Company's operations, and supporting financial statements and proforma budgets and projections for the liquidation process;

(ix) Assist in negotiations with the Company's creditors and in developing the response to any objections from parties in interest to the bankruptcy plan of liquidation or other courses of action undertaken by the Company; and

(x) Preparing and offering declarations, reports, depositions and testimony as may be required of Mr. Klaus from time to time.

(c) Additional Personnel. To address and handle the Liquidation Services as specified above, the CLO may utilize through ABCSG, additional personnel with appropriate professional experience.

(d) <u>Reporting</u>. The CLO shall act under the direction, control, and guidance of the Board and shall serve at the Board's pleasure.

(e) <u>ABCSG Personnel</u>. The CLO will continue to be engaged by ABCSG while rendering services to the Company. The CLO and ABCSG will continue to work on unrelated matters, which will not unduly interfere with services rendered under this Engagement.

(f) <u>Reliance</u>. The Company shall use commercially reasonable efforts to: (i) provide the CLO and ABCSG and its personnel with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that such personnel reasonably request in connection with the services to be provided under this Engagement. The CLO, ABCSG and its personnel may rely, without further independent verification, on the accuracy and completeness of all information that is furnished by or on behalf of a Company or otherwise reviewed by such personnel in connection with the services to be provided under this Engagement. The Company acknowledges and agrees that the CLO and ABCSG and its personnel are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. The CLO and ABCSG and its personnel are under no obligation to update data submitted to them.

(g) <u>Projections</u>. You understand that the services to be rendered by the CLO and ABCSG and its personnel may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. Also, you understand that the CLO and ABCSG and its personnel will be relying on information provided by the Company, its management, employees, and other professionals, in preparation of those projections and other forward-looking statements.

(h) <u>Limitations of Duties</u>.

  (i) Neither the CLO nor ABCSG nor any of its personnel make any representations or guarantees that the goals of this Engagement will be achieved, that a Transaction will be realized, or that any plan or strategic alternative recommended or implemented by the CLO and ABCSG or any of its personnel will be more successful than any other possible proposals or strategic alternatives.

  (ii) Neither the CLO nor ABCSG shall be deemed to be the employer (or co-employer with the Company) of any of the Company's employees. The Company's employees shall at all times be and remain exclusively employees of the Company.

  (iii) Neither the CLO nor ABCSG nor any of its personnel assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any Transaction. ABCSG and its personnel shall only be responsible for the implementation the proposals

3

    approved by the Board and only to the extent and in the manner authorized by and directed by the Board.

 (i) <u>Modifications</u>. This Engagement is fluid, and the specific scope of services may change. In the event circumstances arise and the scope of requested services expands, ABCSG and the Board will consult with respect to amendments and modifications to this Engagement.

2. <u>Compensation</u>. In consideration of ABCSG's acceptance of this Engagement, the Company agrees:

 (a) <u>Hourly Fees</u>. To pay ABCSG for the hourly rate of its personnel engaged in providing services pursuant to the Engagement. The initial hourly rates agreed to for the Engagement are:

| | |
|---|---|
| Principals | $295 |
| Analysts | $150-$250 |
| Clerks | $125 |

 (b) <u>Expenses</u>. The Company shall reimburse the CLO and ABCSG for their reasonable and documented out-of-pocket expenses incurred in connection with the Engagement, including travel, lodging, duplicating, computer research, messenger services, and telephone charges.

 (c) <u>Payment Terms</u>. The Company shall pay ABCSG's hourly fees and reimburse its expenses within ten (10) business days of the Board' receipt of an invoice for such services and itemized expenses. Upon a bankruptcy filing, all invoices reflecting ABCSG's hourly fees and expenses will be submitted in accordance with the Office of the U.S. Trustee guidelines and will be paid pursuant to the Court order authorizing ABCSG's retention.

 (d) <u>Retainer</u>. As reasonably practicable after the execution of this Agreement, the Company shall pay ABCSG an advance payment retainer in the amount of $100,000.00. ABCSG will deposit the retainer in a Trust Account to be held as security for payment of post-bankruptcy fees and expenses. ABCSG shall remit to the Company the remaining balance of the retainer following the termination of the Engagement and upon the satisfaction of all of the Company' obligations hereunder.

 (e) <u>Reasonableness of Fees</u>. The Company acknowledges that a substantial professional commitment of time and effort will be required by ABCSG and its personnel pursuant to this Engagement, and that such commitment may foreclose other opportunities for ABCSG and its personnel. Moreover, the actual time and commitment required for the Restructuring Services under this Engagement may vary substantially, creating "peak load" issues for the firm. Given the numerous issues which may arise in engagements such as this, ABCSG's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of ABCSG that will be required in this Engagement, and the market rate for ABCSG's services of this nature, the parties agree that the fee arrangement

    provided for herein is reasonable, fairly compensates ABCSG, and provides the requisite certainty to the Company.

3.  Term.

  (a)  The term of this Engagement shall commence as of the date set forth above and shall continue until the Engagement is completed, unless terminated with or without cause by either the Company or ABCSG on fifteen (15) days prior written notice, in which event all compensation and expenses owing to ABCSG through the date of such termination (including fees and expenses incurred prior to but invoiced after such termination) shall be immediately due and payable. All provisions of this Agreement setting forth rights or obligations that extend beyond the termination of the Agreement shall survive and shall continue to bind the parties.

  (b)  ABCSG may withdraw from this Engagement and terminate its obligations hereunder and the CLO may resign from their respective positions upon written notice to the Board if any of the Company make it unethical or unreasonably difficult for ABCSG or its personnel to fulfill the terms of this Engagement or otherwise perform their duties under this Engagement.

4.  No Audit. ABCSG and its personnel are not being requested to perform and are not agreeing to undertake an accounting audit, review, or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the American Institute of Certified Public Accountants, the Securities Exchange Commission, or any other state or national professional or regulatory body.

5.  No Third-Party Beneficiary. The Company acknowledge that all advice and work product given by ABCSG or any of its personnel in connection with this Engagement is intended solely for the benefit and use of the Company, including its management and Board, in their capacities as such, in considering the matters to which this Engagement relates. Without ABCSG's specific case-by-case written approval, the Company agrees that the advice and any work product shall not be used for any other purpose and that they shall not be reproduced, disseminated, quoted or referred to other than for the exclusive purpose of accomplishing the tasks that are the subject matter of this Engagement during the term of this Engagement, except as otherwise required by law.

6. <u>Conflicts</u>.

   (a) Except as specifically discussed herein, the CLO and ABCSG are not currently aware of any relationship that would create a conflict of interest with any of the Company or those parties-in-interest of which you have made us aware. Because the CLO is a financial consultant and independent fiduciary and ABCSG is a financial advisory and consulting firm that serves clients in numerous cases and industries, both in and out of court, it is possible that the CLO and/or ABCSG may have rendered services to or have business associations with other entities or people which had or have or may have relationships with any of the Company, including creditors of the Company. The CLO and ABCSG will not represent the interests of any such entities or people in connection with this matter. .

7. <u>Confidentiality</u>. ABCSG and its personnel shall keep confidential all non-public information received from the Company in conjunction with this Engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this Engagement. All confidentiality obligations shall cease as to any part of such information that is or becomes public other than as a result of a breach of this provision.

8. <u>Insurance and Indemnification</u>.

   (a) The Company shall indemnify and hold harmless the CLO to the greatest extent provided in their respective organizational documents for indemnifying any other officer of the Company. <u>As a condition precedent to the effectiveness of this Agreement and Engagement</u>, the CLO and any other officers or managers provided by ABCSG pursuant to this Engagement shall be insured forthwith as officers of the Company under the Company's director and officer liability insurance policies. The Company shall maintain director and officer liability insurance purchased by the Company and shall maintain such insurance and purchase an appropriate tail if the policies are to expire and not be replaced by substantially similar or better policies for the period through which claims can be made against such persons. The Company shall retain sufficient funds in reserve for the purpose of paying any insurance deductible(s) pertaining to any claim(s) made which would trigger insurance coverage.

   (b) The Company shall indemnify and hold harmless ABCSG and each of its personnel, including the CLO, together with its officers, members, partners, directors, employees and agents (each an "<u>Indemnified Party</u>"), from and against any losses, claims, damages and liabilities, joint or several (collectively, the "<u>Damages</u>"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from any services contemplated by this Engagement or performance of services by an Indemnified Party thereunder, including any liability to or on account of any employees of any Company, and will reimburse each Indemnified Party for all fees and reasonable and documented out-of-pocket expenses (including the fees and reasonable and documented out-of-pocket expenses of counsel) (collectively, "<u>Expenses</u>") as incurred in connection with

investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, "Proceedings") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceeding; provided, however, that you will not be liable to any specific Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from, the gross negligence or willful misconduct of such specific Indemnified Party seeking indemnification hereunder. No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of Company' arising out of or in connection with any services contemplated by this Engagement or the performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from, the gross negligence or willful misconduct of the Indemnified Party.

(c) If for any reason other than in accordance with this Engagement, the foregoing indemnity is unavailable to an Indemnified Party or insufficient to hold an Indemnified Party harmless, the Company agree to contribute to the amount paid or payable by an Indemnified Party as a result of such Damages (including all Expenses incurred) in such proportion as is appropriate to reflect the relative benefits to the Company' and/or its stakeholders or beneficiaries on the one hand, and ABCSG on the other hand, in connection with the matters covered by this Engagement and this Section 8 or, if the foregoing allocation is not permitted by applicable law, not only such relative benefits but also the relative faults of such parties as well as any relevant equitable considerations. The Company agree that for purposes of this paragraph the relative benefits to the Company' and/or its stakeholders or beneficiaries and ABCSG in connection with the matters covered by this Engagement and this Section 8 will be deemed to be in the same proportion that the total value paid or received or to be paid or received by Company and/or its stakeholders or beneficiaries in connection with the Damages, bears to the fees paid to ABCSG under the Engagement; provided, however, that (a) in no event will the total contribution of all Indemnified Parties to all such Damages exceed the amount of fees actually received and retained by ABCSG under this Engagement (excluding any amounts received by ABCSG as reimbursement of expenses) and (b) the Company shall have no obligation to make any contribution to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the applicable Indemnified Party.

(d) The Company shall not enter into any waiver, release or settlement of any Proceeding (whether or not ABCSG or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior written consent of ABCSG (which consent will not be unreasonably withheld), unless such waiver, release or settlement (i) includes an unconditional release of ABCSG and each Indemnified Party from all liability arising out of such Proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement

with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.

(e) If any Indemnified Party is entitled to indemnification under this Agreement with respect to any action or proceeding brought by a third party, the Company shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Party. Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Party shall have the right to participate in such action or proceeding and to retain its own counsel but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Party in connection with the defense thereof unless (i) the Company have agreed to pay such fees and expenses, (ii) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner, or (iii) the Indemnified Party shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Party, including situations in which there are one or more legal defenses available to the Indemnified Party that are different from or additional to those available to the Company; provided, however, that the Company shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Parties, except to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding.

(f) The provisions of this Section 8 are contractual obligations, and no change in applicable law or any of the Company's organizational documents, bylaws or any other agreement or undertaking or insurance policy shall affect the CLO's, ABCSG's or any of ABCSG's personnel's rights under this Section.

9. <u>Limitations on ABCSG's Liabilities</u>. If ABCSG or any of its personnel are otherwise in breach of or default under this Engagement, then the maximum liability of ABCSG and such personnel with respect to such breach or default shall be limited to an amount equal to the aggregate of all fees actually paid to ABCSG pursuant to this Engagement as of such date.

10. <u>Successors and Assigns</u>. This Engagement shall inure to the benefit of, and be binding upon, the Company and ABCSG and their respective successors and assigns, including a Chapter 11 Trustee or Chapter 7 Trustee if the bankruptcy case is converted to Chapter 7. Neither party may assign its rights and/or obligations under this Engagement without the written consent of the other party, which consent shall not be unreasonably withheld or delayed.

11. <u>Applicable Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, without reference to principles of conflicts of law. Any action arising from or related in any way to this Engagement shall be brought only in the Federal or state courts located in California or in a court of competent jurisdiction over Company if it seeks chapter 11 protection.

12. <u>Independent Contractor</u>. ABCSG and its personnel serve as independent contractors to the Company pursuant to the terms of this Engagement. This Engagement does not create and shall not be construed to create a relationship of principal and agent, joint venture, co-partners, employer and employee or any similar relationship and the parties hereto expressly deny the existence of any such relationship.

13. <u>Miscellaneous</u>. No amendment of this Engagement or waiver of any provision hereof will be binding unless set forth in a writing signed by the Company and ABCSG. No failure or delay by a party in exercising any right, power or privilege hereunder will operate as waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder. The invalidity or unenforceability of any provision of this letter agreement will not affect the validity or enforceability of any other provision of this letter agreement, each of which will remain in full force and effect. This Engagement may be executed in counterparts, each of which will be deemed to be an original, and all of which will constitute one and the same instrument. Signatures delivered electronically will have the same force and effect as original signatures.

If this Engagement is acceptable to you, please execute and return it to acknowledge your agreement to its terms.

ABC SERVICES GROUP, INC,
a Delaware corporation

By: _____[signature]_____
Name: Charles Klaus,
Its:     President


COMPANY:

Agway Farm & Home Supply, LLC,
a Delaware Limited liability company

By: _____[signature]_____
Name: Jay Quickel
Its:     President & CEO

9