# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AGWAY FARM & HOME SUPPLY, LLC, | ) | Case No. 22-10602 (JKS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DECLARATION OF CHARLES KLAUS IN SUPPORT OF DEBTOR'S APPLICATION FOR ORDER AUTHORIZING IT TO RETAIN AND EMPLOY ABC SERVICES GROUP, INC./CHARLES KLAUS AS CHIEF LIQUIDATING OFFICER**

I, Charles Klaus, pursuant to 28 U.S.C. § 1746 declare as follows:

1.  I am the President of ABC Services Group, Inc. ("ABCSG"), which maintains an office at 13681 Newport Ave., #8-609, Tustin, California 92780. I submit this verified statement pursuant to Rule 2014 in support of the Debtor's Application for an Order Authorizing it to Retain and Employ ABC Services Group, Inc./Charles Klaus as Chief Liquidating Officer Effective *Nunc Pro Tunc* to the Petition Date (the "Application"), filed contemporaneously with this Declaration by the above-captioned debtor-in-possession (the "Debtor") in this chapter 11 case. Except as otherwise indicated, I have personal knowledge of the matters set forth below and, if called as a witness, would testify competently thereto.

**QUALIFICATIONS**

2.  ABCSG is well qualified to represent the Debtor in connection with the types of services requested herein. ABCSG is a leading business restructuring firm. ABCSG has administered more than 200 general assignments and 200 auctions, ranging from "mom and pop" companies to multimillion dollar entities. ABCSG has sold more than 200 businesses as going concerns, both private and public, real property, intellectual property, inventory, furniture, fixtures and equipment. ABCSG are leaders in bringing innovative, alternative solutions for distressed

companies and at the same time maintaining its fiduciary duty to protect the interests of creditors, officers and shareholders.

3.  ABCSG was initially retained by the Debtor on or about March 17, 2022, to provide services to prepare the Debtor in developing a wind-down plan.  In such capacities, ABCSG obtained a familiarity with the Debtor's business, capital structure, and financial affairs and has played a significant role in the Debtor's preparation of this case.  As such, ABCSG has the necessary breadth and depth of institutional knowledge that has made, and will continue to make, this engagement more efficient and effective.

## SERVICES TO BE RENDERED

4.  The Engagement Agreement dated June 29, 2022 provides that ABCSG may provide the following services (to the extent applicable):

(a) **Executive Services – Chief Liquidation Officer**. During the term of this Engagement, ABCSG shall provide Charles "Chuck" Klaus ("Mr. Klaus") to the Debtor to serve as chief liquidation officer ("CLO") for the Debtor.  If Mr. Klaus is unable to serve as CLO, ABCSG and the Debtor will work collaboratively to select a replacement CLO. The CLO will work under the direction of, and report to, the Board of the Debtor to: (i) manage the Debtor's restructuring efforts in the form of an orderly liquidation of the assets and properties of the Debtor, (ii) manage the Debtor's efforts to liquidate its assets and liabilities for the benefit of its creditors and stakeholders, including, without limitation, authorizing the CLO to administer and carry out the Debtor's duties as a debtor-in-possession; (iii) manage a sale process to marshal and sell the Debtor's assets under Section 363 of the Bankruptcy Code, as applicable; and (iv) manage the Debtor's efforts to confirm a plan of liquidation pursuant to the Bankruptcy Code.

(b) **Liquidation Services**. Mr. Klaus, as CLO, and ABCSG in aid of the CLO, will seek to utilize the expertise of ABCSG and its personnel, together with the Debtor's employees, to efficiently provide the following services, as appropriate:

(i) Manage the affairs of the Debtor, supervise the Debtor's professionals and provide periodic reports to the Board;

(ii) Assist legal counsel and the Debtor in executing the Company's liquidation efforts in a chapter 11 case;

(iii) Supervise the engagement of the Debtor's financial advisor, if any, to the extent such party may be necessary to sell particular assets and properties for the highest and best price;

(iv) Seek to maximize the value of the Debtor's assets and operations through, one or more of the following: seeking the sale of one or both of the Debtor's Distribution Centers or their assets, in whole or in part, and/or continue with the orderly liquidation process with a clean-up auction sale at the end of the liquidation sale process (individually and collectively "Transaction");

(v) Assist in connection with motions, responses, or other court activity as directed by legal counsel;

(vi) Prepare periodic reporting to creditors, stakeholders, the Bankruptcy Court, and the Office of the United States Trustee;

(vii) Evaluate and develop liquidation plans and other strategic alternatives for maximizing the value of the Debtor's assets through the vehicles of private or public sales under the supervision of the CLO. The CLO, in coordination with the Debtor's other professionals, shall recommend to the Board various plans and strategic alternatives from time to time, and upon receipt of Board's approval of a proposed course or courses of action, the CLO shall use commercially reasonable efforts to implement such course(s) of action, subject, as applicable, to approval of the Bankruptcy Court if appropriate;

(viii) Assist in the formulation and preparation of the Debtor's disclosure statement and plan of liquidation, including working with the Debtor's professionals and advisors in the creation of financial projections and supporting methodology, key assumptions and rationale, appropriate financial analysis and evaluation of the Debtor's operations, and supporting financial statements and proforma budgets and projections for the liquidation process;

(ix) Assist in negotiations with the Debtor's creditors and in developing the response to any objections from parties in interest to the bankruptcy plan of liquidation or other courses of action undertaken by the Debtor; and

(x) Preparing and offering declarations, reports, depositions and testimony as may be required of Mr. Klaus from time to time.

(xi) Rendering such other services as Debtor's management or counsel may deem necessary that are consistent with the role of a chief liquidating officer and not duplicative of services provided by other employed professionals.

(xii) Provide such other services, as specifically requested by the Debtor and agreed by ABCSG.

**DISINTERESTEDNESS**

5. To the best of my knowledge, information and belief, as set forth herein, ABCSG does not hold or represent an interest adverse to the Debtor's estate and is a "disinterested person," as that term is defined in § 101(14) and modified by § 1107(b), with respect to the matters for which it is to be retained.

6. To the best of my knowledge, information and belief, other than as stated herein, ABCSG has no connection with the Debtor (other than its engagement as chief liquidation officer) or its affiliates, its creditors, its estate, any United States Bankruptcy Judge for the District of Delaware, the United States Trustee or any person employed in the office of the United States Trustee for the Region, any other party in interest, or their respective attorneys and accountants or any person employed in the office of the United States Trustee for the Region) which satisfy the requirements of Bankruptcy Rule 2014.

7. ABCSG has conducted a preliminary conflicts check regarding its connections with the Debtor and other parties in interest. Such a search is designed to reveal any representation of, or potential conflict with, the entity searched or any known subsidiary or affiliate. This search was as complete as possible under the circumstances, but ABCSG recognizes that additional parties in interest may surface during the course of this case. As parties become known or make appearances in this case, ABCSG intends to supplement its disclosures as necessary or appropriate.

8. ABCSG has identified the following connections:

    1. ABCSG performed services for the Debtor (and received payments on account of such services) prior to the Petition Date including but not limited to, reviewing the company's financial information including pending litigation, inventory, sales,

receivables and payables reports. Review management structure, numerous, real and personal property leases, on site visits and phone conversation with current management, financial advisor, counsel to the Debtor and visits to both Distribution Centers located in Virginia and Massachusetts.

9. To the best of my knowledge, neither ABCSG nor any person employed by ABCSG is a creditor, insider, or equity security holder of the Debtor.

10. To the best of my knowledge, neither ABCSG nor any person employed by ABCSG is or was, within two years before the earliest of the Petition Dates (as defined in the Application), a director, officer or employee of the Debtor.

11. To the best of my knowledge, ABCSG does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

12. Because of the size, complexity and the number of parties involved in this case, efforts have been and will continue to be required to identify all of ABCSG's connections with Potential Parties-in-Interest. ABCSG will maintain an ongoing inquiry regarding the Potential Parties-in-Interest and, if appropriate, will file promptly with the Court any appropriate supplemental disclosure that becomes necessary.

13. In view of the foregoing, ABCSG is a "disinterested person" within the meaning of § 101(14).

**COMPENSATION**

14. The Debtor seeks to compensate ABCSG on an hourly basis at the following rates, which are comparable to the rates ABCSG charges its other clients for similar engagements:

| Principals | $295 per hour |
|---|---|
| Analysts | $150-$250 per hour |
| Clerks | $125 per hour |

15. Within the one (1) year prior to the Petition Date, ABCSG received payments from the Debtor totaling $280,524.09 (of which $280,524.09 was paid on or within ninety (90) days before the Petition Date on account of, among other things, retainers, fees and expenses in connection with prepetition services rendered to the Debtor by ABCSG.

16. After deducting all fees and expenses previously billed for prepetition services rendered to the Debtor by ABCSG from the $280,524.09 amount that has been paid to ABCSG, $100,000.00 remains in the ABCSG's trust accounts ("Retainer"). The $100,000.00 balance will be available to be applied to post petition services, as approved by the Court, including pursuant to any procedures for interim compensation approved by the Court.

17. ABCSG will maintain records in support of any fees (in 1/10th of an hour increments), as well as costs, and expenses incurred in connection with services rendered in this chapter 11 case. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtor.

18. In addition to its hourly fees, ABCSG will charge the Debtor for all out of pocket expenses and other charges incurred in respect of this engagement. Generally, these expenses and

Case 22-10602-JKS    Doc 53-4    Filed 07/13/22    Page 8 of 8

charges will include, among other things, telephone charges, photocopying, travel, business meals, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

19.    ABCSG intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this chapter 11 case consistent with the terms set forth in the Application and herein, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Delaware, and any other applicable procedures and orders of this Court.

20.    Other than as set forth above and in the Engagement Agreement, no arrangement is proposed between the Debtor and ABCSG for compensation to be paid in this case.

Dated: July 13, 2022

_____
Chuck Klaus, President