**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>AGWAY FARM & HOME SUPPLY, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10602 (JKS) |

**DECLARATION OF JAY QUICKEL, PRESIDENT AND CEO OF AGWAY FARM & HOME SUPPLY, LLC, IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION AMOUNTS TO CERTAIN CRITICAL VENDORS**

I, Jay Quickel, declare and state as follows:

1. I am the Chief Executive Officer ("CEO") and President for Agway Farm & Home Supply, LLC, a Delaware limited liability company ("Debtor") that has filed a voluntary petition (the "Chapter 11 Petition") under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing this Chapter 11 case (the "Case"). The Chapter 11 Petition was filed on July 5, 2022 (the "Petition Date").

2. I submit this Declaration in support of the Debtor's Motion for an Order Authorizing Debtor to Pay Pre-Petition Amounts to Certain Critical Vendors (the "Motion"). All capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

3. Except as otherwise indicated, all statements set forth in this Declaration are based upon: (a) my personal knowledge; (b) information supplied to me by other members of the Debtor's management or the Debtor's professionals that I believe in good faith to be reliable; (c) my review of relevant documents; or (d) my opinion based upon my experience and knowledge of the Debtor's operations and financial condition. If called upon to testify, I could and would testify to the facts set forth in this Declaration. The Debtor has authorized me to submit this Declaration.

---

[1] The last four digits of the Debtor's federal tax identification number are 1247. The Debtor's address is 6606 W. Broad Street, Richmond, VA 23230.

4.     As more fully set forth in the Declaration filed on July 5, 2022 in support of the first day motions in this case at Docket No. 10 ("First Day Declaration"), the Debtor is a wholesale product distribution company that serves a broad network of independent retail stores and provides full service retail advisory support. The Debtor provides a vast network of farm and home retailers across six different major categories: (1) seasonal home & hardware; (2) farm products; (3) lawn & garden; (4) bird food & supplies; (5) pet food & supplies; and (6) animal health needs.

5.     The Debtor filed the Motion seeking the entry of an order authorizing, but not directing, the Debtor to pay, in the ordinary course of business, the prepetition, fixed, liquidated, and undisputed claims (the "Critical Vendor Claims") of certain critical vendors (collectively, the "Critical Vendors") which provide services that the Debtor deems, in the exercise of its business judgment, to be essential for the continued operation of the Debtor's business and the preservation of the value of its assets. The categories of the Debtor's Critical Vendors are described in the Motion.

6.     On a regular basis, the Debtor, in the ordinary course of its business, makes payments to certain Critical Vendors, such vendors being critical to its business process, including but not limited to technology services and security systems and services. If the Critical Vendors are not paid, their unwillingness to continue to service the Debtor could cause an interruption of the Debtor's business. Such interruption could have drastic consequences for the operations of the Debtor's business due to the lack of service providers in many situations, or the amount of time needed to locate and convert to alternative sources. Such interruption also could negatively affect the Debtor's revenue and further strain the Debtor's liquidity.

7.     In identifying who qualified as a Critical Vendor, the Debtor considered whether the vendor or supplier would be expensive or time-consuming to replace, whether the manufacturing processes are specifically tailored to that vendor's products or services, whether the vendor is the sole source or limited-source supplier of goods or services of the quality and quantity required by the Debtor, without whom the Debtor could not continue to operate without disruption,

and whether the goods or services provided by such vendor are necessary to maximizing the value of the Debtor's estate.

8. The Debtor estimates that it owes Critical Vendors approximately $15,000.00 as of the Petition Date and is requesting authority to pay up to $30,000.00 in pre-petition claims to Critical Vendors. The Debtor further estimates that the essential Critical Vendors of services will be willing to continue to provide such services to the Debtor postpetition, on prepetition terms, if the Debtor makes payments to the essential Critical Vendors. The Debtor believes that payment of the Critical Vendor Claims subject to the conditions set forth in the Motion increases the likelihood that such Critical Vendors will continue to offer existing trade terms or even improve trade terms for the Debtor, thereby maximizing the value of the Debtor's estate upon a sale of its assets.

9. Subject to the Court's approval, the Debtor intends to pay the Critical Vendor claims only to the extent necessary to preserve the Debtor's business and maximize the value of its assets for the benefit of its estate and creditors. To that end, the Debtor proposes to condition the payment of Critical Vendor claims upon each vendor's agreement to continue supplying services on terms that are acceptable to the Debtor. The Debtor will use its reasonable best efforts to require the applicable Critical Vendor to provide trade credit terms for the postpetition delivery of goods and services that are at least as favorable as prepetition trade terms. Specifically, in some circumstances, the Debtor may require certain Critical Vendors to enter into a contractual agreement evidencing such terms.

10. Additionally, the Debtor requests that if a Critical Vendor does not continue to provide services on agreed-upon trade terms, that: (a) the Debtor reserves all rights to assert that such payments made were avoidable postpetition transfers under section 549 of the Bankruptcy Code and recoverable by the Debtor; and (b) upon recovery of the payment by the Debtor, the Critical Vendor claim shall be reinstated as if the payment had not been made. In lieu of recovery of such payments, if there exists an outstanding postpetition balance due from the Debtor to a Critical Vendor, the Debtor may recharacterize and apply any payment made pursuant to an order

granting the Motion to such outstanding postpetition balance and such Critical Vendor will be required to repay to the Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

11. To avoid undue delay and disruption in the provision of such essential services and goods, and the consequent harm to the Debtor's business, estate and creditors, and to maximize the value of the Debtor's assets, I believe it is necessary for the Debtor to have the authority, but not direction, to pay, on a case-by-case basis, the claims of the Critical Vendors.

12. I believe that the services provided by the Critical Vendors are vital to the Debtor's continued business operations to maintain the Debtor's goodwill pending a sale. As such, the failure to honor its obligations to the Critical Vendors could have a material adverse impact on the Debtor's continued operations and, thus, its efforts to maximize value upon a sale.

13. For all of the reasons set forth in the Motion, the Debtor believes the relief requested is absolutely necessary and should be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: July 20, 2022

_____
Jay Quickel
President and Chief Executive Officer