**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>AGWAY FARM & HOME SUPPLY, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10602 (JKS)<br><br>**Hearing Date: August 3, 2022 at 10:00 a.m. (ET)**<br>**Objection Deadline: July 27, 2022 at 4:00 p.m. (ET)**<br><br>**Re: Docket No. 50** |

**SUPPLEMENTAL DECLARATION OF ALAN FRIEDMAN IN SUPPORT OF
DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF SHULMAN BASTIAN FRIEDMAN & BUI LLP
AS BANKRUPTCY COUNSEL NUNC PRO TUNC TO THE PETITION DATE**

I, Alan Friedman, declare and state as follows:

1. I am an attorney admitted to practice in the States of California and Texas, and the United States District Court for the District of California, and am a partner with the law firm of Shulman Bastian Friedman & Bui LLP (the "Firm"), which maintains an office for the practice of law at 100 Spectrum Center Drive, Suite 600, Irvine, California 92618. On July 7, 2022, this Court entered its Order granting the Motion and Order for Admission Pro Hac Vice of Alan J. Friedman [D.I. 20].

2. I submit this supplemental declaration (the "Supplemental Declaration") in support of the application (the "Application")[2] of the above-captioned debtor and debtor-in-possession (the "Debtor") for an order approving the employment and retention of the Firm as its counsel in the Debtor's bankruptcy case (the "Chapter 11 Case"). Unless otherwise stated in this Supplemental Declaration, I have personal knowledge of the facts hereinafter set forth and could

---

[1] The last four digits of the Debtor's federal tax identification number are 1247. The Debtor's address is 6606 W. Broad Street, Richmond, VA 23230.

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Application.

13722312.v1

and would competently testify thereto.

3. I am filing this Supplemental Declaration to: (1) provide additional information and disclosure regarding the relationship between the Debtor and CriticalPoint Capital, LLC ("CPC") and CPC's initial retention of the Firm as requested by the United States Trustee; and (2) further explain the Firm's conflicts procedures and to supplement the disclosures that were included in my original declaration, dated July 13, 2022 (the "Original Declaration"), that was filed with the Application in accordance with Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Court has not yet entered an order regarding the Application.

4. Except as otherwise indicated herein, all facts stated in this Supplemental Declaration are based on my personal knowledge of the Firm's operations and finances, information learned from my review of relevant documents, and information supplied to me by the Firm's partners or employees.

5. As disclosed in the Application, CPC was an upstream equity partner of the Debtor. Immediately prior to the Petition Date, however, CPC completely divested itself of any equity interest in the Debtor. Specifically, the Debtor is owned 100% by Agway Holdings, LLC ("Holdings"). Holdings is owned 15% by Southern States Cooperative ("SSC") and 85% by Project Fence Acquisition, LLC ("Project Fence"). Project Fence was owned 50% by CPC and 50% by Critical Point Fund 1, LLP ("CPF"). CPC and CPF completely divested themselves of their ownership interests in Project Fence immediately prior to the Petition Date. As of the Petition Date, CPC did not have any equity interest in the Debtor.

6. Matt Young and Brad Holtmeier are the principals of CPC and were the managers of Holdings. They resigned as managers prior to the Petition Date. Holdings was the manager of the Debtor. Holdings remains the direct parent of the Debtor and Project Fence remains the direct

13722312.v1

parent of Holdings. Equity Acquisitions Group, LLC ("EAG") is the owner of Project Fence. EAG is owned by Avalon Properties ("Avalon") which in turn is owned by William Lobel ("Lobel"). There is no relationship between EAG and CPC.

7.     As disclosed in the Application, the Firm was initially retained by CPC on December 14, 2021. CPC is a private equity fund that owns interests in various entities. CPC engaged the Firm specifically to advise as to the Debtor's options to address its pending financial issues. CPC did not engage the Firm to provide any advice relative to CPC's rights and/or obligations with respect to the Debtor. The Firm only reviewed and analyzed the financial documents and circumstances of the Debtor. The only advice rendered by the Firm related to possible options for the Debtor to resolve its financial circumstances. This is also why the Firm received a $7,654.25 payment from the Debtor for services performed during the time it was retained by CPC; all of the Firm's advice and retention was directed toward the Debtor, not CPC.

8.     Specifically, the Firm provided approximately 13 hours of services during the time it was retained by CPC reviewing the Debtor's loan documents, undertaking lien searches, understanding the Debtor's operations, and analyzing its financial circumstances. Of note, the Firm reviewed the Debtor's loan documents with Gibraltar. Neither CPC nor its principals were parties to the Gibraltar loan agreement, although Brad Holtmeier executed the loan agreement on behalf of Holdings, as one of its managers. When Gibraltar declared default in mid-January 2022, it became clear that the Debtor needed direct representation.

9.     Shortly following the receipt of the notice of default from Gibraltar, CPC terminated the Firm's representation of CPC. On January 25, 2022, the Debtor retained the Firm directly. Also, on January 31, 2022, CPC executed a conflict waiver wherein CPC specifically agreed that in the event a conflict were to arise between the Debtor and CPC, the Firm could still

represent the Debtor in such matter.

10. After the conflict waiver was signed, the Firm investigated potential claims against CPC. While the Firm does not believe that any viable claims against CPC exist, it understands that the Committee has the ability to investigate and pursue any such potential claims.

11. To further explain the Firm's conflict search process, in connection with preparing the Original Declaration and the Supplemental Declaration, the Firm submitted the names of parties-in-interest in this Chapter 11 Case for review in the computerized conflict database system maintained by the Firm. The Firm maintains and systematically updates its conflict check system in the regular course of business of the Firm, and it is the regular practice of the Firm to make and maintain these records. The conflict check system maintained by the Firm is designed to include every matter on which the Firm is now or has been engaged, the entity for which the Firm is now or has been engaged, and in each instance, the identity of related parties and adverse parties. It is the policy of the Firm that no new matter may be accepted or opened within the Firm without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client, as well as related and adverse parties. Accordingly, the database is regularly updated for every new matter undertaken by the Firm.

12. Pursuant to Paragraph 16 of the Original Declaration, I indicated that to the best of my knowledge, neither the Firm nor any of its attorneys have any "connection" with the Debtor, its creditors, or their related parties.

13. In reviewing the language contained in Paragraph 16 of the Original Declaration, and following discussion with the United States Trustee, I believe some clarification is needed. Specifically, in the Application, the Firm only disclosed connections that were adverse or could

potentially affect the Firm's disinterestedness. Interpreting the use of the word "connection" broadly, however, would also include, *inter alia,* the Firm's vendors, social connections, and prior dealings with professionals and other parties involved in the Chapter 11 Case.

14. Accordingly, I supplement the Original Declaration to disclose the following connections:

    a. Federal Express – vendor of the Firm.

    b. Euler Hermes – Firm has worked with them in other unrelated matters.

    c. Adobe – vendor of the Firm.

    d. First Insurance Funding – vendor of the Firm.

    e. Morris James LLP – the Firm has served and currently serves as co-counsel with Morris James LLP in other, unrelated cases, and also represented the debtor in at least one prior case where Morris James LLP represented the committee.

    f. Paladin Management Group – the Firm has worked with and used Paladin as advisors in other unrelated cases.

    g. Lance Miller – the Firm has worked with Mr. Miller in other unrelated cases. The Firm does not, and has not, represented Mr. Miller.

    h. William Lobel – the Firm previously represented Mr. Lobel in an unrelated matter more than five years ago. The Firm's representation of Mr. Lobel terminated in 2017. I was also partners with Mr. Lobel in different law firms, the most recent of which ended on December 31, 2017.

    i. Avalon Properties – the Firm previously represented Avalon in an unrelated matter. The Firm's representation of Avalon terminated in 2014.

    j. Chuck Klaus/ABC Services - The Firm has represented these parties from

time to time over the years in matters unrelated to the Debtor. The Firm is currently representing Mr. Klaus and ABC Services in its role as assignee of an unrelated entity, which such engagement the Firm believes will terminate in the near future. The Firm does conduct and prepare annual corporate maintenance for ABC Services.

    k.    CPC – the Firm represents other entities in which CPC has an interest that are wholly unrelated to this Chapter 11 Case.

    l.    Pachulski Stang - The Firm presently represents a debtor in an unrelated case in which Pachulski Stang represents the committee.

    m.    FTI Consulting- The Firm presently represents a debtor in an unrelated case in which FTI Consulting also represents the debtor as the financial advisor. Their work has been completed although I don't believe the representation has been formally terminated.

15.    I continue to reserve the right to supplement the Firm's disclosures in the event that the Firm learns of any additional connections that require disclosure. If any new material, relevant facts, or relationships are discovered or arise, the Firm will promptly file another supplemental declaration pursuant to Bankruptcy Rule 2014.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: July 29, 2022                              */s/ Alan Friedman*
                                                    Alan Friedman