# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGWAY FARM & HOME SUPPLY, LLC, | Case No. 22-10602 (JKS) |
| Debtor. | Re: D.I. 70 |

### PRELIMINARY OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR AN ORDER APPROVING (1) KEY EMPLOYEE INCENTIVE PLAN; (2) KEY EMPLOYEE RETENTION PLAN, AND (3) GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditors (the "Committee") of Agway Farm & Home Supply, LLC (the "Debtor"), hereby submits this preliminary objection (the "Objection") to the *Debtor's Motion for an Order Approving (1) Key Employee Incentive Plan; (2) Key Employee Retention Plan, and (3) Granting Related Relief* [D.I. 70] (the "Motion").[1] In support hereof, the Committee respectfully represents as follows:

## OBJECTION

1. There is no meaningful secured debt in this case, no requirement for permission to use cash collateral, and no need for debtor-in-possession financing. The Debtor has shuttered daily operations, turning now to an orderly liquidation of its assets consisting of inventory, equipment, and intellectual property. As such, the sole beneficiaries of this chapter 11 case are unsecured creditors. Thus, every dollar expended is one less dollar going to the only class of creditors in the estate.

2. The Committee, which was just recently formed and only rounded out its professional team on July 26, 2022, is the watchdog of each dollar spent and has a fiduciary duty

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

to the creditors of this estate and the Committee takes its fiduciary duties seriously as it seeks to maximize recoveries for unsecured creditors.

3. In the short time that the Committee has been formed, it has sought substantial information from the Debtor to answer obvious and important questions; namely, what happened to this company that required it to file for bankruptcy protection less than two years after it was sold by Southern States? How was the company capitalized? Who was in charge of operations, and what was done, and could it have been done differently, to spare the more than 100 employees who lost their jobs and to prevent the loss of the millions of dollars not paid to vendors? Why has prior equity, Critical Point Capital, run from this company and what was their responsibility in the demise of the once great name of Agway? There are many other questions and to be fair, the Debtor has indicated they will help get the information the Committee has requested so as to answer as many of these questions as possible. However, the Committee's initial meeting with the Debtor and its professionals only occurred on July 29, 2022 and a brief, one-week adjournment is more than reasonable so the Committee can digest what it has only just learned from that initial meeting and then make its decision whether to support the KEIP and KERP.

4. To be clear, the Committee initially asked the Debtor to adjourn the Motion with respect to the KERP and the KEIP for one (1) week so that the Committee could get up to speed and conduct its diligence in furtherance of its fiduciary duties. That request was denied. The Debtor advised the Committee that if the Committee asked the court for an adjournment they

planned to advise the Court in response that a one-week adjournment would lead to a mass exodus of their roughly 2 dozen employees, which the Committee respectfully doubts.[2]

5. The Committee is skeptical that any of the employees will leave because the Motion is pushed off for one week to allow the Committee time to exercise its fiduciary duties and evaluate the appropriateness of the KERP and the KEIP, however, based on the Debtor's comments, the Committee initiated outreach to a liquidator to provide input on the liquidation of the Debtor's remaining assets in a compressed timeframe. Based on historical practice, the Committee is confident that one of the leading liquidators, which, as the Court knows, are extremely skilled and competent in large-scale liquidations, could move forward expeditiously. The Committee is not expecting at this time for a liquidator to step in but was compelled by the Debtor's warnings about the possible exodus of employees to act proactively.

6. In short, the newly formed Committee should not be rushed to exercise its fiduciary responsibility and consent to the payment of over $350,000 in administrative expenses to liquidate assets that may not be worth even two to three times that amount. Arguably, to do so in haste would be a breach of the Committee's fiduciary duty.

7. During the adjournment, the Committee expects to work in good faith and diligently with the Debtor to discuss its numerous concerns in an effort to have the KEIP and KERP resolved consensually so it does not have to file substantive objections. Some of the concerns the Committee wants addressed are as follows:

---

[2] It is unfortunate that the Debtor is requiring the Committee to file this objection rather than simply agreeing to a one (1) week adjournment, and the Committee is disheartened that the Debtor has forced the Committee to spend time and resources that could have been, and should have been, better spent on working through case issues. While the Debtor may report that it is seeking to maximize value to the unsecured creditors, the Committee believes that the Debtor's requirement of having to prepare and file an objection, and go to Court to report on this, is contrary to the Debtor's statement that it wishes to maximize value to the unsecured creditors. Actions speak louder than words.

a.  First, the $75,000 KEIP only covers one employee, Mr. Quickel, an insider, who the Committee is informed already received a significant pre-petition retentive payment just one month prior to the Petition Date. The only sale benchmark that must be achieved for the KEIP payment is sale proceeds of $1.5 million (after payment of any break-up fee or expense reimbursements). The Committee is at a loss at this time as to why Mr. Quickel should receive an additional bonus tied to the sale process and what harm is caused by adjourning the Motion, certainly as to the KEIP, when there is not a pending sale motion. The Debtor asserts Mr. Quickel is essential to completing the sale process, yet the Debtor is proposing to retain ABC Services Group, Inc. and Mr. Klaus as chief liquidation officer (the "CLO"). *See* [D.I. 53]. The CLO has been in place with the Debtor since March 2022 and based on the description of services to be provided, should be familiar with the Debtor's financial condition, the sale process, the interested parties, and any proposed bids *Id.* at ¶¶ 7-9. Moreover, the Debtor is also proposing to retain Focus Management Group USA, Inc. ("Focus") as the Debtor's financial advisor.[3] *See* [D.I. 52]. Focus was initially retained in January 2022 and is also familiar with the Debtor's business, capital structure and financial affairs. Adding a potential $75,000 administrative cost to the professional fees to be incurred in the run up to the liquidation of the Debtor's assets appears, at first blush, excessive, especially considering the pre-retention bonus already paid to Mr. Quickel.

b.  Second, while the employees eligible for the KERP may be needed to continue the Debtor's wind-down efforts and assist in the *de minimis* sales and the overall sale

---

[3] The Committee is currently reviewing the Debtor's various retention applications and reserves rights in connection therewith.

4

efforts, the Committee requires further analysis as to the KERP's proposed costs versus its benefits. The KERP participants will receive their payments at two fixed time periods. In the limited time afforded the Committee and its professionals to review the KERP, the Committee has not come to a conclusion as to whether the proposed KERP is within market, or the cost-benefit of the KERP is justified. In a wind-down case such as this one, where there is no secured debt, and every dollar spent by the Debtor is one less dollar for the unsecured creditors, and as stated above, the Committee has a fiduciary obligation to analyze the proposed KEIP and KERP.

## RESERVATION OF RIGHTS

8.     The Committee reserves its right to further address the Motion, and any other ancillary issues, either by filing a supplement to this Objection or at oral argument or testimony to be presented at any hearing.

## CONCLUSION

WHEREFORE, the Committee respectfully requests entry of an order: (i) adjourning the Motion for a period of not less than seven (7) days (subject to the Court's availability and calendar); and (ii) in the alternative, in the event the Motion is not adjourned, denying the

Motion for the reasons set forth herein, and granting the Committee such additional relief as is necessary and appropriate.

| | |
|---|---|
| Dated: August 1, 2022 | PACHULSKI STANG ZIEHL & JONES LLP |
| | |
| | */s/ Bradford J. Sandler* |
| | Robert J. Feinstein (admitted *pro hac vice*) |
| | Bradford J. Sandler (DE Bar No. 4142) |
| | Colin R. Robinson (DE Bar No. 5524) |
| | 919 N. Market Street, 17th Floor |
| | Wilmington, DE 19801 |
| | Telephone: (302) 652-4100 |
| | Facsimile: (302) 652-4400 |
| | Email: rfeinstein@pszjlaw.com |
| | bsandler@pszjlaw.com |
| | crobinson@pszjlaw.com |
| | |
| | *Proposed Counsel to the Official Committee of Unsecured Creditors* |