# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGWAY FARM & HOME SUPPLY, LLC,[1] | Case No. 22-10602 (JKS) |
| Debtor. | **Obj. Deadline: TBD**<br>**Hearing Date: TBD** |

## EXPEDITED MOTION TO DESIGNATE STALKING HORSE PURCHASER, APPROVE STALKING HORSE PURCHASE AGREEMENT, AND PROVIDE BID PROTECTIONS FOR REMAINING ASSETS

Agway Farm & Home Supply, LLC, the debtor and debtor in possession (the "*Debtor*") in the above-captioned chapter 11 case (the "*Chapter 11 Case*") files this motion (this "*Motion*") for entry of an order, substantially in the form attached to this motion as **Exhibit A**, (i) designating Myron Bowling Auctioneers, Inc. ("*Myron Bowling*") as a stalking horse bidder, under the *Order (A) Approving Bidding Procedures and Protections in Connection With Certain of the Debtor's Assets Free and Clear of Lines, Claims, Encumbrances, and Interests; (B) Scheduling an Auction and Sale Hearing; (C) Approving the Form and Manner of Notice Thereof; and (D) Granting Related Relief* [D.I. 221] (the "*Bidding Procedures Order*"), (ii) approving the stalking horse purchase agreement attached to this motion as **Exhibit B** (the "*Myron Bowling APA*"), (iii) approving certain bid protections for Myron Bowling, in accordance with the Bidding Procedures Order and the Myron Bowling APA, and (iv) granting such other and further relief as this Court deems just and proper. In support of this Motion, the Debtor respectfully represents:

---

[1] The last four digits of the Debtor's federal tax identification number are 1247. The Debtor's address is 6606 W. Broad Street, Richmond, VA 23230.

13833640.v1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to the Motion, if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

3. By this Motion, the Debtor seeks approval of Myron Bowling as a stalking horse bidder, approval of the Myron Bowling APA, and approval of bid protections for Myron Bowling, as set forth in the Myron Bowling APA. The Bidding Procedures Order approved: (i) the sale of the Purchased Assets to True Value as the stalking horse bidder; (ii) the sale of the Inventory Assets to FL Hardware as the stalking horse bidder; (iii) bidding procedures to apply to the sale of the Debtor's Remaining Assets; and (iv) procedures for an auction to be held on October 12, 2022. The Bidding Procedures Order did not; however, approve stalking horse bid protections for stalking horse bidders other than those identified in the Debtor's *Motion for Order (A) Approving Bidding Procedures and Protections in Connection With Certain of the Debtor's Assets Free and Clear of Lines, Claims, Encumbrances, and Interests; (B) Scheduling an Auction and Sale Hearing; (C) Approving the Form and Manner of Notice Thereof; and (D) Granting Related Relief* (the "**Bidding Procedures Motion**"),[2] namely True Value and FL Hardware.

4. The Debtor did not obtain the Myron Bowling offer until after entry of the Bidding

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Bidding Procedures Motion.

Procedures Order. Pursuant to the Bidding Procedures Order, the auction is to occur on October 12, 2022. In light of the late date, the Debtor cannot obtain approval of bid protections for Myron Bowling on regular notice and must, therefore, file this Motion and accompanying motion to shorten and limit notice in order to obtain approval of the bid protections for Myron Bowling on or before the date set for approval of the sales on October 14, 2022.

## MATERIAL TERMS OF THE MYRON BOWLING APA

5. The Myron Bowling APA will result in the sale or auction of the Debtor's Remaining Assets. In particular, it provides for the purchase of certain fixed assets[3] (the "***Fixed Assets***") for the sum of $615,000.00 ("***Purchase Price***"), subject to overbids, and to act as the Debtor's selling agent/auctioneer to conduct a commercially reasonable sale of the Debtor's Remnant Inventory (as defined in the Myron Bowling APA) without charging any commission or expenses to the Debtor and only charging and retaining an 18% buyer's premium.[4] To be clear, the assets comprised in the Myron Bowling APA are entirely separate from those assets that are a part of the stalking horse bids of True Value and FL Hardware.

6. The Myron Bowling APA provides for bidder protections (the "***Bid Protections***") comprising a break-up fee in the amount of **$18,450.00** (the "***Break-up Fee***"), which is 3% of the Purchase Price.

7. In addition, in accordance with the Myron Bowling APA, the initial overbid for the Fixed Assets is $615,000 plus the Break-up Fee of $18,450 plus overbid of $15,000, unless the

---

[3] The Fixed Assets consist of the furniture, fixtures and equipment, with all related tooling packages, related items, any and all computer hardware and software and mechanisms used to operate the software associated with the equipment and miscellaneous contents of the locations, but not including the items listed in Schedule 1.2 to the Myron Bowling APA which includes but is not limited to High Bay Racking System at the Seller's Westfield, Massachusetts location and leased equipment and any third party items at the Premises which are not owned by the Debtor.

[4] The Debtor will be filing a separate application to employ Myron Bowling as its auctioneer pursuant to 11 U.S.C. § 327.

3

overbidder can vacate the Debtor's two distribution centers by no later than December 30, 2023, in which case the overbid shall be in the amount of $478,450 ($615,000 less saved rent in January 2023 of $170,000 plus the Break-up Fee of $18,450 plus overbid of $15,000). In the event an overbidder wants to purchase only the Fixed Assets from one of the Debtor's two distribution centers, the overbid amount is $307,500 plus overbid of $7,500, unless the overbidder can vacate by no later than December 30, 2022, in which case the overbid shall be in the amount of $215,000 ($307,500 less saved rent in January 2023 of $100,000 plus overbid of $7,500).

8. On September 22, 2022, this Court entered the Bidding Procedures Order, approving, among other things, certain bidding and auction procedures for: (i) the sale of the Purchased Assets to True Value as the stalking horse bidder; (ii) the sale of the Inventory Assets to FL Hardware as the stalking horse bidder; and (iii) the sale of the Debtor's Remaining Assets. The Bidding Procedures Order also approved a break-up fee to both True Value and FL Hardware in the amount of 3% of the stalking horse bid amounts.

9. Since entry of the Bidding Procedures Order, the Debtor has negotiated and entered into the Myron Bowling APA, which provides for the purchase of the Fixed Assets for $615,00.00, subject to overbids, and for the auction of the other Remaining Assets as the Debtor's selling agent.

10. The Myron Bowling APA currently represents the highest or otherwise best offer for the Remaining Assets, but Myron Bowling has agreed to subject the Myron Bowling APA to higher or otherwise better offers, pursuant to the Bidding Procedures Order and as set forth in the Myron Bowling APA.

11. The Myron Bowling APA otherwise complies with the terms of the Bidding Procedures Order.

13833640.v1

12.     The auction is set to take place on October 12, 2022 and the Court set a hearing for approval of the sales on October 14, 2022.  The Debtor cannot obtain approval of the Myron Bowling APA and Bid Protections on normal notice before the auction date or sale hearing date. Having a stalking horse purchaser for the Fixed Assets will benefit the Debtor, for the reasons set forth in the Bidding Procedures Motion and as set forth by this Court in the Bidding Procedures Order.

13.     Therefore, by this Motion, the Debtor seeks expedited approval of Myron Bowling as the stalking horse bidder for the Fixed Assets.

## APPROVAL OF THE BID PROTECTIONS IS APPROPRIATE

14.     The Debtor believes that the Bid Protections are fair and reasonable under the circumstances. The Bid Protections provided for in the Myron Bowling APA were negotiated at arms' length and in good faith and were a necessary inducement to Myron Bowling's participation in the proposed sale transaction and willingness to subject its bid to a competitive auction process.  As discussed below, the Myron Bowling APA sets a "floor" value for the Fixed Assets that maximizes the likelihood that the Debtor will receive the highest or otherwise best offer for the Fixed Assets to the benefit of the Debtor's estate.

15.     Approval of the Bid Protections is governed by standards for determining the appropriateness of bid protections in the bankruptcy context. Courts have identified at least two (2) instances in which bid protections may benefit the estate.  First, a break-up fee or expense reimbursement may be necessary to preserve the value of a debtor's estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *In re O'Brien Envtl. Energy, Inc.,* 181 F.3d 527, 533 (3rd Cit. 1999).  Second, if the availability of break-up fees and

expense reimbursements were to induce a bidder to research the value of the debtor and convert the value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth. *See id.; see also In re Reliant Energy Channel View LP*, 594 F.3d 200, 206-08 (3d Cir. 2010) (reasoning that a break-up fee should be approved if it is necessary to entice a party to make the first bid or if it would induce a stalking horse bidder to remain committed to a purchase).

16. In *O'Brien*, the Third Circuit reviewed the following nine (9) factors set forth by the lower court as relevant in deciding whether to award a termination fee:

(a) the presence of self-dealing or manipulation in negotiating the break-up fee;

(b) whether the fee harms, rather than encourages, bidding;

(c) the reasonableness of the break-up fee relative to the purchase price;

(d) whether the unsuccessful bidder placed the estate property in a "sale configuration mode" to attract other bidders to the auction;

(e) the ability of the request for a break-up fee to serve to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders or attract additional bidders;

(f) the correlation of the fee to a maximum value of the debtor's estate;

(g) the support of the principal secured creditors and creditors' committees of the break-up fee;

(h) the benefits of the safeguards to the debtor's estate; and

(i) the substantial adverse impact of the break-up fee on unsecured creditors, where such creditors are in opposition to the break-up fee.

13833640.v1

*See In re O'Brien Envtl. Energy, Inc.,* 181 F.3d at 536.

17. While none of the factors is dispositive, an application of the facts to several of such factors supports the approval of the Bid Protections. In particular, the Bid Protections are necessary to preserve the value of the Debtor's estate because they will enable the Debtor to establish an adequate floor value for the Fixed Assets and to therefore insist that competing bids be materially higher or otherwise better than the Myron Bowling APA—a clear benefit to the Debtor's estate. Myron Bowling would not agree to act as a stalking horse without the Bid Protections given the substantial time and expense it has incurred in connection with negotiating definitive documentation and the risk that it will be outbid at the auction. Without the Bid Protections, the Debtor might lose the opportunity to obtain the highest or otherwise best offer for the Fixed Assets and would certainly lose the downside protection that will be afforded by the existence of Myron Bowling as the stalking horse bidder. The bid of Myron Bowling sends a message to all potential bidders that the Fixed Assets are at least worth the Purchase Price and puts pressure on potential competing bidders to "put their best foot forward" in formulating their bids. Therefore, without the benefit of the bid of Myron Bowling, the bids received at auction for the Fixed Assets could be substantially lower than the bid offered by Myron Bowling.

18. In addition, payment of the Bid Protections in the context of a sale to another purchaser will not diminish the Debtor's estate to the extent they become payable, as the Bidding Procedures require that any competing bid must exceed the Myron Bowling APA by an amount in excess of the Bid Protections.

19. Accordingly, based on the foregoing, the Debtor submits that the Bid Protections reflect a sound business purpose, are fair and appropriate under the circumstances, and should be approved.

**RESERVATION OF RIGHTS**

20.     Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtor's or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) an admission that any assumed contract or lease is an executory contract or unexpired lease within the purview of section 365 of the Bankruptcy Code or a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtor's or any other party-in-interest's right under the Bankruptcy Code or any other applicable law.

**NOTICE**

21.     Notice of this Motion has been provided to the following: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.

22.     The Debtor respectfully submits that no further or other notice of this motion is required.

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order, granting the relief requested in this motion and such other and further relief as this Court may deem just and proper.

13833640.v1

Dated:  October 6, 2022
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Brya M. Keilson*
Jeffrey R. Waxman (DE Bar No. 4159)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: bkeilson@morrisjames.com

and

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman (admitted *pro hac vice*)
Melissa Davis Lowe (admitted *pro hac vice*)
Max Casal (admitted *pro hac vice*)
100 Spectrum Center Drive, Suite 600
Irvine, CA 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
E-mail: afriedman@shulmanbastian.com
E-mail: mlowe@shulmanbastian.com
E-mail: mcasal@shulmanbastian.com

*Counsel to the Debtor and Debtor in Possession*