**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| **Agway Farm & Home Supply, LLC,**[1] | : | Case No. 22-10602 (JKS) |
| | : | |
| Debtor. | : | **Objection Due: October 14, 2022, at 12:00 p.m.** |
| | : | **Hearing Date: October 14, 2022, at 12:00 p.m.** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTOR'S EXPEDITED MOTION TO DESIGNATE STALKING HORSE PURCHASER, APPROVE STALKING HORSE PURCHASE AGREEMENT, AND PROVIDE BID PROTECTIONS FOR REMAINING ASSETS [D.I. 248]**

Andrew R. Vara, the United States Trustee for Region Three (the "U.S. Trustee"), through the undersigned counsel, in furtherance of the duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5) and pursuant to 11 U.S.C. §§ 307, 327, 503, and 363, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for this District, objects to the *Debtor's Expedited Motion to Designate Stalking Horse Purchaser, Approve Stalking Horse Purchase Agreement, and Provide Bid Protections for Remaining Assets* (the "Motion")[2] [D.I. 248]. In support of his Objection, the U.S. Trustee states:

**PRELIMINARY STATEMENT**

Although the U.S. Trustee does not object *per se* to the Debtor exercising its business judgment to engage in the proposed sales effort, it is unclear what bid protections -- if any -- the proposed purchaser, Myron Bowling Auctioneers, Inc. ("Bowling"), should be awarded as a stalking horse bidder.

Additionally, the portions of the underlying asset purchase agreement with Bowling

---

[1] The last four digits of the Debtor's federal tax identification number are 1247. The Debtor's address is 6606 W. Broad Street, Richmond, VA 23230.

[2] To the extent not otherwise defined herein, capitalized terms shall have the meaning assigned to them in the Motion and any other referenced document or pleading.

(the "Bowling APA") that relate to the Debtor's proposed retention of Bowling as the Debtor's agent and auctioneer are premature prior to the filing and approval of an application to retain Bowling under 11 U.S.C. § 327(a).

As set forth in the Motion, the Debtor intends to retain Bowling to serve as an agent to liquidate the Debtor's remaining assets under section 327 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014. However, that particular relief is not being sought in this Motion, and it is inappropriate to approve any provisions of the Bowling APA related to Bowling acting as an agent and auctioneer before a retention application is properly filed and noticed for hearing. Given the Debtor intends that Bowling serve as an estate professional, Bowling's retention must be reviewed and approved under section 327(a) and Bankruptcy Rule 2014. The Motion does not satisfy those requirements.[3]

The requirements of section 327(a) and Bankruptcy Rule 2014 ensure that professionals who administer assets of a debtor's estate – such as Bowling – will tender undivided loyalty and provide untainted advice in furtherance of their fiduciary responsibilities. If the Debtor seeks to employ Bowling, the firm is required to file an affidavit or declaration of a qualified Bowling representative vouching to the firm's disinterestedness and disclosing connections with any parties-in-interest. Further, any monies to be paid to Bowling under the Bowling APA should be subject to a further order of the Court and review by parties-in-interest under the standards applicable to professional compensation under the Bankruptcy Code.

---

[3] The Debtor states that it will be filing a separate application to employ Bowling as its auctioneer pursuant to 11 U.S.C. § 327. Motion at ¶ 5, fn. 4. The U.S. Trustee reserves any and all rights, duties and obligations to object to Bowling as an estate professional or to be paid any compensation under the Bankruptcy Code.

**JURISDICTION, VENUE AND STANDING**

1.     This Court has jurisdiction to hear the Motion and this Objection.

2.     Pursuant to 28 U.S.C. § 586, the U.S Trustee is charged with overseeing the administration of Chapter 11 cases filed in this District.  Under section 586, as well as section 307 of the Bankruptcy Code, Congress charged the U.S. Trustee with broad responsibilities in Chapter 11 cases and the standing to rise and be heard on any issue in any case or proceeding. 11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest)[4.]

3.     Specifically, in accordance with 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with the duties and obligations to supervise the administration of cases and trustees in Chapter 11 cases, monitoring applications filed under section 327 of title 11 and, whenever the U.S. Trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications.

4.     Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the Motion and this Objection.

---

[4] *See* H.R. Rep. No. 595, 95th Cong., 2d Sess. 88 (1977) (United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena.").

**BACKGROUND AND RELEVANT FACTS**

5. On July 1, 2022, the Debtor commenced this Chapter 11 case.[5]

6. On July 18, 2022, the U.S. Trustee appointed an official committee of unsecured creditors. [D.I. 63].

7. On September 1, 2022, the Debtor filed a motion seeking approval of bidding procedures and protections in connection with the sale of certain of the Debtor's assets free and clear of liens, claims, encumbrances, and interests and scheduling an auction and sale hearing (the "Bidding Procedures Motion") [D.I. 168].

8. On September 22, 2022, this Court entered an order approving the Bidding Procedures Motion [D.I. 221]. The following are among the approved Bid Procedures:[6]

- True Value Company, LLC was approved as the Stalking Horse Bidder for the Purchased Assets.
- Florida Hardware, LLC was approved as the Stalking Horse Bidder for the Inventory Assets.
- October 10, 2022 at 5:00 p.m. was set as the Bid Deadline.
- October 12, 2022 at 10 a.m. was set as the auction date in the event that the Debtor receives one or more Qualified Bids (other than the bid submitted by the Stalking Horse Bidder) by the Bid Deadline, and
- The Sale Hearing was set for October 14, 2022, at 12:00 p.m.

9. The Debtor filed the present Motion on Friday October 7, 2022, seeking, among other things, approval of Bowling as a stalking horse bidder, approval of the Bowling APA, and approval of bid protections for Bowling, as set forth in the Bowling APA. Mot. ¶ 3.

10. In particular, the Motion seeks to approve the Bowling APA which, among other

---

[5] Additional information regarding the Debtor, including its business operations, corporate and capital structure, and the events leading to the Petition Date is more fully set forth in the *Declaration of Jay Quickel in Support of First Day Pleadings* [D.I. 10].

[6] See the *Order (A) Approving Bidding Procedures and Protections in Connection With Certain of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) Scheduling an Auction and Sale Hearing; (C) Approving the Form and Manner of Notice Thereof; and (D) Granting Related Relief* [D.I. 221].

4

things, provides for:

- the purchase of certain Fixed Assets for the sum of $615,000.00 (the "Purchase Price"), subject to overbids.

- Bowling to act as the Debtor's selling agent/auctioneer to conduct a commercially-reasonable sale of the Debtor's Remnant Inventory without charging any commission or expenses to the Debtor and only charging and retaining an 18% buyer's premium.

- Bid Protections comprising of a Break-up Fee in the amount of $18,450.00, which is 3% of the Purchase Price.

Mot. ¶¶ 5,6.

11. In addition, the Bowling APA provides that:

- Bowling will act as the Debtor's Agent to conduct a commercially reasonable sale of the Debtor's "Remnant Inventory" sometime after November 15, 2022.

- Bowling will charge the Debtor no commission or expenses related to the Remnant Inventory sale but will charge and retain an 18% Buyer's Premium collected from buyers on top of the sale price.

## ARGUMENT

**A. Neither the Debtor nor Bowling Have Shown That Bowling Is Entitled to a Break-Up Fee Under Section 503(A)(1)(a) of the Bankruptcy Code.**

12. Bid protections must be sought pursuant to, and analyzed under, section 503(b) of the Bankruptcy Code. *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") (citing *Calpine Corp. v. O'Brien Envt'l Energy (In re O'Brien Envt'l Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999)). Section 105(a) is not a basis to award an administrative expense. *See In re Women First Healthcare, Inc.*, 332 B.R. 115, 120-21 (Bankr. D. Del. 2005).

13. The analysis of bid protections under Section 503(b) "must be made in reference to general administrative expense jurisprudence. In other words, the allowability of bid protections, like that of other administrative expenses, depends upon the requesting party's ability to show that

the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535; *see In re Energy Future Holdings Corp. ("EFH I")*, 904 F.3d 298, 313 (3d Cir. 2018) ("[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]").

14. An administrative expense's benefit to the estate "must be *actual*, not hypothetical." *In re Energy Future Holdings Corp. ("EFH II")*, No. 19-3492, 2021 WL 957301 at *10 (3d Cir. Mar. 15, 2021) (emphasis in original) (citing *In re Continental Airlines, Inc.*, 146 B.R. 520, 526 (Bankr. D. Del. 1992)).

15. A break-up fee may provide a benefit to the estate where (1) assurance of the break-up fee promotes more competitive bidding, such as by inducing a bid that otherwise wouldn't have been made, (2) availability of the break-up fee induces a buyer to perform diligence and set a floor price. *See EFH I*, 904 F.3d at 313-14 (citing *O'Brien*, 181 F.3d at 537).

16. Even if a break-up fee would benefit the estate, the Court is not required to approve it. *See EFH I*, 904 F.3d at 313-14 ("We have never held that bankruptcy courts must allow fees whenever they find that [a break-up fee confers a benefit on the estate.]"). The Court must determine, based on the totality of the circumstances of the case, "whether the proposed fee's potential benefits to the estate outweigh any potential harms, such that the fee is actually necessary to preserve the value of the estate." *Id.* (citing *O'Brien*, 181 F.3d at 535) (quotation marks omitted).

17. The party requesting bid protections has the burden of showing that the fee is actually necessary to preserve the value of the estate. *See O'Brien*, 181 F.3d at 535.

18. In *EFH II*, the United States Court of Appeals for the Third Circuit considered, in the context of a motion to dismiss based upon the sufficiency of the pleading, an administrative

expense application submitted by an unsuccessful bidder. Initially, the unsuccessful bidder argued that the lower courts erred in measuring whether its bid had conferred a benefit using hindsight (as opposed to measuring the benefit at the time the bid was submitted). *See EFH II* at *12. The Third Circuit rejected that argument and concluded that, consistent with the well-established Bankruptcy Code policy of limiting administrative expenses, it was "entirely appropriate to consider" the asserted benefit "through the rearview mirror." *Id.*

19. The unsuccessful bidder in *EFH II* also asserted two potential benefits to the process: that it served as a stalking horse bidder, and that its unsuccessful efforts provided a "roadmap" for other viable bids that were later submitted, including the successful bid. *Id*. The Third Circuit rejected the argument that the unsuccessful bidder had stated a plausible argument for allowance of an administrative expense on a theory that its bid served as a catalyst for the submission of other bids, as it was the only bid at the time it was submitted. *Id.* While the bid did not technically establish a "floor" because the estates ultimately accepted a substantially lower offer after the unsuccessful bid fell through, the Third Circuit found that the argument that the bid had provided a "roadmap" for other bids post-termination was a plausible argument in favor of benefit to the estate. *Id.* at *12-13. The Third Circuit remanded the matter in *EFH II* so that a sufficient record could be developed to enable the bankruptcy court to determine, in hindsight, the extent to which the unsuccessful bidder's participation had actually benefitted the estate more than it had harmed the estate. *Id.* at *15.

20. In this case, there is no evidence that Bowling's actions ever provided the benefits of a stalking horse bidder to the Debtor's estate. Nothing in the Motion indicates that Bowling's bid enticed other bidders to bid on the assets in question or provided a roadmap for other bidders. At this point, the Court cannot determine if Bowling's eve-of-auction knighting as "stalking horse"

bidder might elicit qualified bids. Accordingly, the Court does not have a basis to determine that such bid protections will confer an "actual" benefit on the Debtor's estate that outweighs any potential harms. Consistent with the Third Circuit's latest guidance, the Court should not consider such bid protections until there is a sufficient evidentiary record on which to make the legal determinations outlined in *O'Brien* and subsequent Circuit cases.

21. In sum, the Debtor's request for authority to award bid protections to Bowling should be denied, as it undermines this Court's control of administrative expenses.

**B. This Court Should Not Prematurely Approve Provisions in the Bowling APA Regarding Bowling Acting as a Retained Professional Pursuant to 11 U.S.C. § 327 and Compensated Pursuant to 11 U.S.C. § 330**

22. Section 327(a) of the Bankruptcy Code provides that the trustee or debtor-in-possession, "with the court's approval, may employ one or more attorneys, accountants, appraisers, **auctioneers**, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a) (emphasis added). An "auctioneer" is defined as "[a] person legally authorized to sell goods or lands of other persons at public auction for a commission or fee." BLACK'S LAW DICTIONARY (10th ed. 2014).[7] Additionally, Bankruptcy Rule 2014 provides, "[a]n order approving the employment of attorneys, accountants, appraisers, **auctioneers, agents,** or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee" (emphasis added).

23. The purpose of section 327 is to ensure both that the person's employment is "held to the strictest of fiduciary standards and that the professional possesses no conflict of interest with

---

[7] An auction is "[a] public sale of property to the highest bidder." BLACK's LAW DICTIONARY (10th ed. 2014).

the estate." *See In re Buchanan*, 1998 WL 1041291, *2 (Bankr. E.D.Va. Aug. 11, 1998); *In re Cornerstone Products, Inc.*, 416 B.R. 591 (Bankr. E.D. Tex. 2008) ("The purpose of § 327(a) is to ensure that any auctioneer or other professional appointed to represent the estate will tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities."). Among other things, the retention of professionals without a formal application process would impair full and fair disclosure of the terms of each professional's engagement and would deny parties in interest a full determination of whether the professional satisfies the "disinterestedness" and "adverse interest" standards under 11 U.S.C. §327(a). In order to implement these statutory provisions, Bankruptcy Rule 2014 dictates the manner in which a professional is to be retained under section 327 and requires that the application state, among other things, the specific facts showing the necessity for the employment, the reasons for the selection, and any connections with parties in interest. *See* FED. R. BANKR. P. 2014.

24. The Bowling APA suggests that the Debtor will seek the services of Bowling to facilitate the liquidation of the Debtor's remaining assets and contemplates that Bowling will act as the Debtor's "agent" to sell the "Remnant Assets." Mot. ¶¶ 5, 9; Bowling APA ¶ 1.4(b).

25. To properly be retained under Bankruptcy Code section 327, the Debtor and/or Bowling must: (1) submit a section 327(a) application, on notice; (2) submit a declaration of disinterestedness pursuant to Bankruptcy Rule 2014 in support of the application; and (3) satisfy the requirements of that Code section and applicable law, chief among them the requirement that the firm neither hold nor represent an interest adverse to the Debtor's estate and be a "disinterested person." The Debtor has not filed any of the above-referenced documents, but rather seeks to have some of Bowling's prospective retention approved in the APA in lieu of same.

26. The Debtor acknowledges that Bowling is going to provide services for

compensation, and that those services relate to the liquidation of the Debtor's property outside the ordinary course of business. Thus, Bowling is a professional auctioneer and must be retained pursuant to Code section 327(a). Additionally, Bankruptcy Rule 2014 contemplates that the Debtor's "agent" file an application for an order of employment, and Bowling, an auctioneer is unambiguously acting as the Debtor's "agent." Until an application to retain Bowling is made and approved by the Court, any compensation for Bowling is improper. *See In re Borders Group, Inc.*, 453 B.R. 477, 485 (Bankr. S.D.N.Y. 2011) ("Applications to retain brokers, auctioneers and liquidators to conduct *de minimis* asset sales are commonplace it need not be an expensive or time-consuming process.").[8]

27. It should be noted that Bowling has been retained as an auctioneer previously. *See In re Marine Builders, Inc.*, Case No. 19-90632-AKM-11 (Bankr. S. D. Ind.) March 29, 2021 [D.I. 335].

28. The U.S. Trustee reserves any and all rights, duties and obligation found under law, equity and otherwise including, *inter alia*, to: (i) complement, supplement, augment, alter and/or modify this Objection; (ii) file a subsequent reply or objection; (iii) file an appropriate motion; (iv) conduct any and all discovery as may be required or deemed necessary and to assert such other grounds as may become apparent upon further factual discovery; and (iv) cross-examine any and all witnesses in support of the Motion.

---

[8] Any auction or sale of the Debtor's property outside the ordinary course of business should also satisfy the requirements of such sales under 11 U.S.C. § 363. *See, e.g.*, *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986).

## **CONCLUSION**

WHEREFORE, the U.S. Trustee respectfully requests that the Court sustain the Objection and deny the Motion to the extent set forth herein and grant such other and further relief as the Court may deem just and proper.

                                              Respectfully Submitted,

                                              **ANDREW R. VARA**
                                              **UNITED STATES TRUSTEE**
                                              **REGION 3 & 9**

                                        By: */s/ Richard L. Schepacarter*
                                            Richard L. Schepacarter
                                            Trial Attorney
                                            United States Department of Justice
                                            Office of the United States Trustee
                                            J. Caleb Boggs Federal Building
                                            844 King Street, Room 2207, Lockbox 35
                                            Wilmington, DE 19801
                                            (302) 573-6491
                                            (302) 573-6497 (Fax)
Dated: October 13, 2022                  Richard.Schepacarter@usdoj.gov